ACCEPTED
15-25-00133-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/22/2025 12:10 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00133-CV

_____

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/22/2025 12:10:50 PM
CHRISTOPHER A. PRINE
Clerk

## In The Fifteenth Court of Appeals

_____

DAWN BUCKINGHAM, M.D., as Commissioner of the
Texas General Land Office,

Appellant,

v.

LONE OAK CLUB, LLC,

Appellee.

_____

Appeal from Cause No. CV27446-A in the 253rd District Court of
Chambers County, Texas

_____

## BRIEF OF APPELLANT

_____

Ken Slavin
ken.slavin@kempsmith.com
Texas Bar No. 18496100
KEMP SMITH LLP
221 N. Kansas St. | Suite 1700
El Paso, Texas 79901
(915) 533-4424
(915) 546-5360 (facsimile)

Deborah C. Trejo
deborah.trejo@kempsmith.com
Texas Bar No. 24007004
KEMP SMITH LLP
1301 Nueces St. | Suite 100
Austin, Texas 78701
(512) 226-0005
(512) 320-5431 (facsimile)

Attorneys for Appellant

**Appellant Conditionally Requests Oral Argument**

# IDENTITY OF PARTIES AND COUNSEL

**Petitioner-Appellant-Defendant:** **Dawn Buckingham, M.D., as Commissioner of the Texas General Land Office**

**Trial and Appellate Counsel**

Ken Slavin
State Bar No. 18496100
ken.slavin@kempsmith.com
KEMP SMITH LLP
221 North Kansas, Suite 1700
El Paso, Texas 79901
Telephone: (915) 533-4424
Facsimile: (915) 546-5360

Deborah Trejo
State Bar No. 24007004
deborah.trejo@kempsmith.com
KEMP SMITH LLP
1301 Nueces St., Suite 100
Austin, Texas 78701
Telephone: (512) 226-0005
Facsimile: (512) 320-5431

**Respondent-Appellee-Plaintiff:** **Lone Oak Club, LLC**

**Trial and Appellate Counsel:**

Edgar R. Norwood
State Bar No. 15113500
enorwood@ednorwoodlaw.com
THE NORWOOD LAW FIRM
340 Main Street, 2nd Floor
Liberty, Texas 77575
Telephone: (936) 336-3700
Facsimile: (936) 336-7634

i

# TABLE OF CONTENTS

Page

Identity of Parties and Counsel ................................................................i

Table of Contents ................................................................. ii

Index of Authorities .................................................................. iii

Record and Party References ....................................................................iv

Abbreviation and Record References ........................................................vi

Statement of the Case......................................................................... vii

Statement on Oral Argument ................................................................ viii

Issues Presented .....................................................................................ix

Statement of Facts ....................................................................................1

Summary of Argument ..............................................................................7

Argument.................................................................................................10

    I. In a bench trial, *de novo* review applies for questions of law and
    legal sufficiency review standards apply to factual findings ............................10

    II. The Club does not own the bed of the Lone Oak Bayou in the
    Barrow Survey as it was not a navigable stream that could be conveyed
    by the Small Bill and its bed cannot be defined by a gradient boundary
    survey..............................................................................................10

        A. Lone Oak Bayou is not a navigable stream as it does not have banks
        that confine its waters to a definite channel ....................................11

        B. Lone Oak Bayou has no defined banks from which a gradient
        Boundary survey can be conducted to locate its bed ....................................14

III. The Club's argument for avoiding the Texas Supreme Court's instructions lacks merit ..................................................................15

    A. The Texas Supreme Court's opinion is not clearly erroneous…………..17

    B. The more fully developed facts exception does not apply to justify ignoring the Texas Supreme Court's instructions…………………………..19

IV. Legal sufficiency challenges to Findings of Fact 3-5 and 7-8 are established by admission that Lone Oak Bayou is 80% marsh and has no banks necessary to perform a gradient boundary survey and an incomplete chain of title contradicts Finding of Fact 14 .......................23

Prayer ...............................................................................................................25

Certificate of Compliance ...............................................................................26

Certificate of Service ......................................................................................27

Appendix

    A. Final Judgment (CR 1097-1116)
    B. Findings of Fact and Conclusions of Law (CR 1141-1146)

iii

# INDEX OF AUTHORITIES

Page

**Cases**

*Brainard v. State,* 17 S.W.3d 6 (Tex. 1999).............................................7, 17, 22, 23

*Briscoe v. Goodmark Corp.,* 102 S.W.3d 714 (Tex. 2003)....................................16

*Bush v. Lone Oak Club, LLC,* 546 S.W.3d 766
(Tex. App.—Houston [1st Dist.] 2018, pet. granted)...........................................3

*Bush v. Lone Oak Club, LLC,*
601 S.W.3d 639 (Tex. 2020) .......................................vii, 3-8, 17, 18, 20, 21, 23

*Butler v. Sadler,* 399 S.W.2d 411 (Tex. Civ. App.—Corpus Christi 1966,
writ ref'd n.r.e.)..............................................................................................13

*Graham Cent. Station, Inc. v. Peña,* 442 S.W.3d 261 (Tex. 2014).......................10

*HNMC, Inc. v. Chan,* 683 S.W.3d 373 (Tex. 2024)..............................................10

*Hoefs v. Short*, 273 S.W. 785 (Tex. 1925) .......................................................11, 12

*Hudson v. Wakefield,* 711 S.W.2d 628 (Tex. 1986)....................................8, 16, 19

*Jefferson Cnty. Drainage Dist. No. 6 v. McFaddin,* 291 S.W. 322
(Tex. Civ. App.—Beaumont 1927),
*aff'd*, 4 S.W.2d 33 (Tex. [Comm'n Op.] 1928)................................................12

*Motl v. Boyd*, 286 S.W. 458 (Tex. 1926)....................................................11, 22, 23

*Oklahoma v. Texas*, 260 U.S. 606 (1923)...................................................11, 22, 23

*Phillips v. Bramblett,* 407 S.W.3d 229 (Tex. 2013)...............................................16

*Tex. Health and Human Servs. Comm'n v. El Paso Cnty. Hosp. Dist.,*
351 S.W.3d 460 (Tex. 2011) ..........................................................................16

iv

*Wilborn v. Terry,* 161 S.W. 33 (Tex. Civ. App.—Galveston 1913, writ ref'd) .... 12

**Statutes and Rules**

Tex. R. App. P. 33.1(d) ................................................................................. 10

TEX. REV. CIV. STAT. ANN. Art. 5414a ................... vi, vii, ix, 3-5, 10, 14, 15, 17-24

# ABBREVIATIONS AND RECORD REFERENCES

## Abbreviations

**Barrow Survey:** The 160-acre surface estate of Abstract 46, Chambers County, Texas, granted by the Governor of Texas on January 9, 1872, to Sophronia Barrow, recorded at Book L, Page 299 in the Official Public Records of Chambers County, Texas

**Commissioner:** Appellant, Dawn Buckingham, M.D., as Commissioner of the Texas General Land Office

**GLO:** The Texas General Land Office

**Lone Oak Bayou:** The tidally-influenced body of water, located in Chambers County, referred to in the original Patent of the Barrow Survey as "Orr's Bayou," including bodies of water referred to as lakes, such as the Lone Oak Lake

**The Club:** Appellee, Lone Oak Club, LLC

**Small Bill:** TEX. REV. CIV. STAT. ANN. Art. 5414a

## Record References

**CR [page]:** References to the Clerk's Record filed in the Court of Appeals

**[Volume] RR [page]:** References to the Reporter's Record filed in the Court of Appeals

## STATEMENT OF THE CASE

*Nature of the Case*:

This case is an *ultra vires* title dispute over the tidally-submerged beds of the Lone Oak Bayou. The Club sued the Commissioner to quiet title, contending that the Lone Oak Bayou was a navigable stream and that a 1929 statute, the Small Bill, conveyed the submerged land to the Club. CR 25-31. The Commissioner contended, *inter alia*, that the State owns the tidally-influenced bed below mean high tide and the Lone Oak Bayou was a marsh, not a navigable stream that could be conveyed by the Small Bill, thereby establishing State ownership of the tidally-submerged bed of the Lone Oak Bayou below mean high tide. CR 788, 847-859, 861-862. The original lawsuit involved several parcels and the Club severed the Barrow Survey into this test case. CR 11-31.

*Trial Court*:

253rd District Court, Chambers County, Hon. Chap B. Cain, III

*Trial Court's Disposition*:

The trial court initially granted the Club's summary judgment motion, decreeing that the Club owns fee simple title to the entire bed of Lone Oak Bayou located in the Barrow Survey. CR 980-84. The Texas Supreme Court reversed the summary judgment and remanded the case to the trial court to determine "whether (and, if so, to what extent) the bayou within the Club's tract is a navigable stream or watercourse such that the conveyance was validated by the Small Bill." *Bush v. Lone Oak Club, LLC,* 601 S.W.3d 639, 657-658 (Tex. 2020). According to the Texas Supreme Court, this requires evidence that the Lone Oak Bayou has defined banks from which a gradient boundary survey could be conducted in order to determine if the bayou is a navigable stream and, if so, the location of any privately-owned submerged bed of the bayou conveyed by the Small Bill. *Id.*

After a bench trial, the trial court rendered judgment in favor of the Club, despite conceding that the evidence established that the Lone Oak Bayou through the Barrow Survey did not have the banks necessary for a surveyor to conduct the gradient boundary survey required to locate the boundaries of a navigable stream or watercourse. CR 1097-1116; 1143-1144 [FF 10, 11, 13].

## STATEMENT ON ORAL ARGUMENT

Appellant believe that this is a straight-forward appeal that can be decided without oral argument as the material facts are not disputed and the Texas Supreme Court's requirements on remand are clear and correct. However, if Appellee requests oral argument and the Court grants oral argument, Appellant respectfully requests that it be allowed to participate in the oral argument.

# ISSUES PRESENTED

1.      Does the Small Bill apply to the bed under Lone Oak Bayou within the Barrow Survey?

2.      Was it improper for the trial court to ignore remand instructions from the Texas Supreme Court based on the trial court's opinion that the instructions were clearly erroneous?

3.      Did the evidence establish that the submerged bed of the Lone Oak Bayou in the Barrow Survey belongs to the State?

4.      The Commissioner challenges the legal sufficiency of the evidence to support the following Findings of Fact:

      a.      Finding of Fact 3;

      b.      Finding of Fact 4;

      c.      Finding of Fact 5;

      d.      Finding of Fact 7;

      e.      Finding of Fact 8; and

      f.      Finding of Fact 14.

## STATEMENT OF FACTS

This *ultra vires* trespass to try title dispute concerns the ownership of the submerged bed of the Lone Oak Bayou within the Barrow Survey—an inlet to the Trinity Bay, connected to the Gulf of Mexico (also known as the Gulf of America) ("Gulf"). CR 25-31, 37, 787; 2 RR 216; 3 RR 99; 5 RR Defendant's Exhibit ("Dx") 15. The water in Lone Oak Bayou has always been tidally influenced. CR 450, 787, 798; 2 RR 219.

The Lone Oak Bayou within the Barrow Survey is without a doubt a marsh that lacks the qualified banks necessary to contain the flow of the bayou and prevent its water from overtopping those banks, which qualified banks would be required for a surveyor to conduct a gradient boundary survey to properly locate a gradient boundary for the bayou and determine its width. 2 RR 18-19, 30, 37-40, 100, 128-130, 150, 156, 164-171, 188, 193-194, 220-222; 3 RR 20, 23-26, 79, 90; 5 RR Dx 17-19.

The State conveyed the 160-acre property in the Barrow Survey to the Club's predecessor-in-title in 1872 when the Texas Governor patented the survey—the lines of which crossed portions of the Lone Oak Bayou, then referenced in the patent as "Orr's Bayou." 4 RR Plaintiff's Exhibit ("Px") 39-41. The Club acquired title to most, but not all, of the Barrow Survey in 2002. 4 RR Px 79.

1

The GLO manages the state-owned submerged lands located within the tidewater limits for the benefit of the Permanent School Fund, including the arms, beds and shores of the Gulf within the boundaries of Texas, including the Lone Oak Bayou. 3 RR 95; 5 RR Dx 33, 37. By letter dated August 23, 2004, the Club learned that the GLO claimed that the State owned the submerged bed of the Lone Oak Bayou. 3 RR 93-98; 5 RR Dx 37. In response to learning that the Club proposed to rebuild a bridge and construct a rock weir at the mouth of the Lone Oak Bayou, where it joins the Trinity Bay, the GLO advised the Club that it must obtain an easement from the State to do so. 3 RR 58-62; 5 RR Dx 37.

Later on, in December of 2008, after disputes arose between the Club and members of the public attempting to hunt ducks in the bayou, who were concerned about being denied access to hunt by the Club, the Club asked the GLO to explain the "extent of state ownership in Lone Oak Bayou and the attendant waterways and their beds adjacent to and flowing through" the Club's property. 3 RR 63; 4 RR Dx 52, 54. On April 16, 2009, the GLO explained to the Club the GLO's position that "the boundary between the state owned submerged land along the tidally-influenced Lone Oak Bayou and connected lakes is the line of mean high water (MHW)" and that "the stretch of Lone Oak Bayou and the lakes directly connect to the bayou . . . are state-owned submerged lands," to which the public had access. 4 RR Dx 53.

2

On September 13, 2012, the Club sued the Commissioner for *ultra vires* trespass to try title to recover possession of property. CR 11. The original suit covered multiple surveys. CR 25-31. The trial court severed out the land covered by the Barrow Survey as this test case before this Court. CR 11-31.

In 2017, upon initially hearing competing summary judgment motions, the trial court concluded that the Small Bill applied and that the Club owned the tidally-submerged bed of the Lone Oak Bayou within the Barrow Survey. CR 980-84. The First Court of Appeals affirmed. *Bush v. Lone Oak Club, LLC,* 546 S.W.3d 766 (Tex. App.—Houston [1st Dist.] 2018, pet. granted).

The Texas Supreme Court, however, reversed the summary judgment and remanded the case to the trial court, ruling that the Club did not establish that "the bayou is a navigable stream or water course as a matter of law." *Bush v. Lone Oak Club, LLC,* 601 S.W.3d 639, 657 (Tex. 2020).

In order to establish superior title to the bed of the Lone Oak Bayou under the Small Bill, the Texas Supreme Court said that the Club must demonstrate that the bayou is not a marsh for which no qualified boundary banks exist but a "water course" or a "navigable stream," with qualified banks. *Id.* at 657-658. The court explained that a stream's gradient boundary is:

> midway between the lower level of the flowing water that

3

> just reaches the cut bank, and the higher level of it that just does not overtop the cut bank. In other words, it is that portion of a stream's soil which is alternately covered and left bare as there may be an increase or diminution in the supply of water, and which is adequate to contain it at its average and mean stage during an entire year.

*Id.* at 658 (internal quotation marks, alterations, and citation omitted). The court instructed:

> To constitute a "stream" or "water course" *and calculate its gradient boundary,* Lone Oak Bayou must have banks. The Club has not proven this to be the case. The Club's evidence concerning the presence of banks includes a surveyor affidavit stating that "in certain areas Lone Oak bayou has a defined bank." But the bayou has also been described as a marsh, for which no banks exist," *and for which "a gradient boundary cannot be determined."*[1]

*Id.* at 658 (emphasis supplied, citations omitted).

Although the Texas Supreme Court found that the Small Bill might apply to a tidally-influenced navigable stream or watercourse in some circumstances, the court also advised, "Our holding does not affect the State's ownership of land below mean high tide *and outside the gradient boundary of a watercourse or navigable stream* because those areas are not included within the Small Bill's scope." *Id.* at

---

[1] At the subsequent bench trial, the same surveyor, Michael Chandler, testified and conceded that there are no banks of the Lone Oak Bayou within the Barrow Survey from which a gradient boundary could be conducted. 2 RR 100, 128-29, 150. Counsel for the Club and the trial court also concede this undisputed fact. CR 1143 [Finding of Fact 10]; 2 RR 12-13. 16, 18, 37-41; 3 RR 109, 125-126.

4

657 (emphasis supplied). The Texas Supreme Court explained, "To be a statutory 'navigable stream,' the average width between the banks must be 30 feet, and the stream continues 'so far up as [it] retain[s] that average width.' We measure the distance between a stream's banks considering the 'entire bed of the stream': *the land between the horizontal gradient boundary on each bank*." *Id.* at 657-58 (emphasis supplied; citations omitted).

After explaining these requirements and the proper method for locating the gradient boundary of a navigable stream, the Texas Supreme Court noted that it was unable from the summary judgment record to determine if Lone Oak Bayou was a statutory navigable stream or to determine the location of any defined banks along the bayou's waters from which a gradient boundary for the bayou could be determined to define it. *Id.* at 658. The Texas Supreme Court then remanded to the trial court the question of "whether (and, if so, to what extent) the bayou within the Club's tract is a navigable stream or water course such that its conveyance was validated by the Small Bill." *Id.*

Therefore, on remand, the Texas Supreme Court required the Club to prove where the submerged bed of the Lone Oak Bayou within the Barrow Survey lie within (and not outside of) the gradient boundary of the Lone Oak Bayou. This required evidence of the existence of qualified banks necessary to establish Lone

5

Oak Bayou as a statutory navigable stream and determine its boundaries to properly locate the submerged bed of the Lone Oak Bayou that the Club claims to own. *Id.* at 657-658.

At the bench trial, the Club's counsel and the trial court both conceded that the Lone Oak Bayou lacks the type of banks necessary to perform a gradient boundary survey to locate the boundaries of Lone Oak Bayou. CR 1143 [Finding of Fact 10]; 2 RR 12-13. 16, 18, 37-41; 3 RR 109, 125-126. However, the trial court found that the Club was not required to show the location of any boundary of the Lone Oak Bayou that it claims to own by gradient boundary survey because the Texas Supreme Court got the law wrong and its legal instructions to the trial court on remand were clearly erroneous. CR 1144 [Finding of Fact 13]. The trial court's judgment awarded title to the Club of all of the submerged bed of the Lone Oak Bayou within the Barrow Survey. CR 1097-1116. The judgment located the boundaries of the submerged bed awarded to the Club based on a "sight survey," locating so-called "evident" banks. CR 1097-1116. These plotted low banks were submerged daily by the ebb and flow of the tide and did not contain the waters of the Lone Oak Bayou, which disbursed throughout the marsh. 2 RR 115, 144-48, 153-156, 208-209, 221-222; 3 RR 7-18, 26-27. From the trial court's judgment, the Commissioner appeals.

6

## SUMMARY OF ARGUMENT

To establish title to the submerged bed of Lone Oak Bayou within the Barrow Survey, the Club must, but cannot, prove that Lone Oak Bayou has two characteristics: (1) banks high enough to contain the flow of water within the channel and prevent the water from overtopping those banks, and (2) the type of qualified banks necessary to conduct a gradient boundary survey in order to calculate the width of Lone Oak Bayou and properly locate its bed within its boundaries. *Bush*, 601 S.W.3d at 657-58. However, the gradient boundary of the Lone Oak Bayou within the Barrow Survey cannot be located. Lone Oak Bayou has no qualified banks necessary to perform a gradient boundary survey. And the low banks that do exist do not confine the water to a defined channel as those banks are overtopped daily by the ebb and flow of the tide. These facts are undisputed. Nevertheless, the Club's lawyer argued, and the trial court agreed, that the Texas Supreme Court got the law wrong in this case and that its mandate requiring the Club to locate the gradient boundary of the Lone Oak Bayou was clearly erroneous.

To the contrary, long-standing Texas law establishes that a gradient boundary survey determines "the line between public and private ownership along the banks of a navigable stream." *Brainard v. State,* 17 S.W.3d 6, 15-16 (Tex. 1999) (citations omitted). For a tidally-influenced watercourse that lacks qualified banks to conduct

7

a gradient boundary survey, and thus, is not a statutory navigable watercourse, the boundary between state-owned and privately-owned land may be determined by mean high tide, using the scientific tide gauge survey methodology.[2] 2 RR 151. *See Bush*, 601 S.W.3d at 657.

Texas law obligated the trial court to follow the mandate and opinion of the Texas Supreme Court. *See Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1986) ("[C]ourts should look not only to the mandate itself, but also to the opinion of the court."). The trial court admittedly did not follow the Texas Supreme Court's instructions. Primarily because of the ebb and flow of the tide, Lone Oak Bayou lacks qualified banks necessary to perform a gradient boundary survey. Further, the so-called "evident banks" eye-balled and plotted by the Club's surveyor are not banks that contain the flow of the Lone Oak Bayou with some points only marking the water line on grasses and other vegetation rising from submerged land in the watery marsh. In fact, most of these low banks identified by the Club's surveyor are overtopped daily by the tide. 2 RR 115, 144-48, 153-156, 208-209. 221-222; 3 RR

---

[2] In this case, the Texas Supreme Court ruled that the State owns the tidally-influenced bed below mean high tide located outside of the gradient boundary of any navigable stream or watercourse in the Barrow Survey. *Bush,* 601 S.W.3d at 657.

8

7-18, 26-27. Therefore, the trial court's judgment should be reversed and rendered in favor of the Commissioner.

# ARGUMENT

## I. In a bench trial, *de novo* review applies for questions of law and legal sufficiency review standards apply to factual findings.

*De novo* is the proper standard on review for questions of law decided by the trial court and the no evidence standard of review applies to legal sufficiency challenges to the evidence. *HNMC, Inc. v. Chan,* 683 S.W.3d 373, 380 (Tex. 2024); *Graham Cent. Station, Inc. v. Peña,* 442 S.W.3d 261, 263 (Tex. 2014). In a nonjury case, no objection in the trial court is required to challenge the legal sufficiency of the evidence. Tex. R. App. P. 33.1(d). The Commissioner here asserts legal sufficiency challenges to Findings of Fact 3-8 and 14 on which she did not have the burden of proof. CR 1142-1144.

## II. The Club does not own the bed of the Lone Oak Bayou in the Barrow Survey as it was not a navigable stream that could be conveyed by the Small Bill and its bed cannot be defined by a gradient boundary survey. [Issues 1-3]

The Club does not own the submerged bed of the Lone Oak Bayou under the Small Bill for two reasons. First, to be a watercourse subject to the Small Bill, Lone Oak Bayou must have banks that contain the flow of the water and prevent that water from overtopping. There is no dispute that Lone Oak Bayou in the Barrow Survey contains no such banks. Second, the Club is unable to locate the bed of the Lone Oak Bayou it claims to own under the Small Bill because the Lone Oak Bayou

10

does not contain the type of banks necessary to perform a gradient boundary survey to locate the submerged bed within those boundaries.

> **A. Lone Oak Bayou is not a navigable stream as it does not have banks that confine its waters to a definite channel.**

To be a navigable stream or watercourse, Lone Oak Bayou "must have bed, banks, a current of water, and a permanent source of water supply." *Hoefs v. Short*, 273 S.W. 785, 787 (Tex. 1925). The banks "are the water-washed and relatively permanent elevations or acclivities at the outer lines of the river bed which separate the bed from the adjacent upland, whether valley or hill, *and served to confine the waters within the bed and preserve the course of the river when they rise to the highest point <u>at which they are still confined to a definite channel</u>.*" *Motl v. Boyd*, 286 S.W. 458, 467 (Tex. 1926) (emphasis supplied) (citing to *Oklahoma v. Texas*, 260 U.S. 606, 631-632 (1923)). No identified "banks" of the Lone Oak Bayou within the Barrow Survey confine the water within the Club's identified banks. The testimony of Club's surveyor, Michael Chandler ("Chandler"), establishes that the "evident banks" he plotted from a "sight survey," which are indeed, often just lines on grass and not banks at all, do not confine the water. 2 RR 67-71, 107, 115, 125-130, 144-156; 4 RR Px 13, 21. Instead, daily, as the tide rises, the water flows over and beyond most of Chandler's identified "banks." 2 RR 153 (Chandler admits "that

11

the measurements that [he] took indicate that water is regularly overtopping the banks [he has] identified based on daily tide."); 3 RR 8-12, 17-20. Chandler also agrees that what properly constitutes the banks of a watercourse are banks that contain the flow of Lone Oak Bayou on a regular basis. 2 RR 151.

Chandler also testified that about 80% of the Barrow Survey is marsh; one of the questions posed by the Texas Supreme Court about the Lone Oak Bayou. 2 RR 130. Texas courts have characterized marshes as flat, low lying areas frequently inundated with water. *See Wilborn v. Terry,* 161 S.W. 33, 34 (Tex. Civ. App.— Galveston 1913, writ ref'd); *Jefferson Cnty. Drainage Dist. No. 6 v. McFaddin,* 291 S.W. 322, 326 (Tex. Civ. App.—Beaumont 1927), *aff'd*, 4 S.W.2d 33 (Tex. [Comm'n Op.] 1928). Swamps and marshes like the Lone Oak Bayou within the Barrow Survey are generally not watercourses. *See Hoefs*, 273 S.W. at 787.

A substantial part of the Lone Oak Bayou in the Barrow Survey disperses well beyond the Club's identified channel of the Lone Oak Bayou into what the Club's surveyor called a lake. 2 RR 107, 146, 153-56. Chandler admitted that any "evident banks" he marked around the so-called lake do not contain the water within those banks and that those banks are not qualified banks from which one could conduct a gradient boundary survey. 2 RR 150, 153, 156. As the tide rolls in, water spreads throughout the marsh known as Lone Oak Bayou beyond and outside the

12

"evident banks" identified by Chandler. 2 RR 107, 156 ("water is going to flow probably out of every low crevice in the Lone Oak Lake that you can find during high tide"). The top elevation of some of the "banks" that Chandler identified was where the water hits the salt grass sprouting from the submerged bed below. 2 RR 153-155. Chandler marked the water line elevation on the grass even though he admitted that the grass alone obviously does not contain the flow of the water which water disbursed through the marsh of the Lone Oak Bayou. *Id.*

Texas law treats marshes as a distinct category of state-owned property separate from navigable streams, and the evidence establishes that Lone Oak Bayou is predominantly marsh rather than a navigable stream. The Legislature has consistently recognized state ownership of "marshes and other areas along the Gulf of Mexico within tidewater limits" as property "held in trust for the benefit of all inhabitants." *Butler v. Sadler,* 399 S.W.2d 411, 415 (Tex. Civ. App.—Corpus Christi 1966, writ ref'd n.r.e.). Legislative enactments specifically include "all islands, saltwater lakes, bays, inlets, marshes and reefs owned by the State within tide water limits" as a separate category from navigable streams. *Id.* The evidence from the Club's surveyor shows that at least 80% of the Barrow Survey consists of marsh, with water regularly diffusing beyond any of his identified low banks throughout the marsh area during daily tides. The nature of the Lone Oak Bayou in

13

the Barrow Survey as marsh, combined with the lack of banks that confine water flow, distinguishes Lone Oak Bayou from true navigable streams.

### B. Lone Oak Bayou has no defined banks from which a gradient boundary survey can be conducted to locate its bed.

The type of banks needed to conduct a gradient boundary survey of the Lone Oak Bayou admittedly do not exist within the Barrow Survey. CR 1143 [Finding of Fact 10]; 2 RR 12-13, 16, 18, 37-41; 3 RR 109, 125-126. Therefore, the Club is unable to properly locate the boundaries of the Lone Oak Bayou that the Texas Supreme Court required to establish what bed, if any, was conveyed by the Small Bill. The Club asserts that Lone Oak Bayou has a current of water, but even according to the Club's own surveyor, the source of the water comes from tidal flow or fresh water and the flow of water runs both ways—to and from the coast. 2 RR 130. Thus, the current is inconsistent and flows in different directions depending on the source of water. This tidal influence and flat, low land near the coast explain why no qualified banks exist in the Lone Oak Bayou and why no surveyor can conduct a gradient boundary survey to locate its boundaries and bed within the Barrow Survey.

14

**III.    The Club's argument for avoiding the Texas Supreme Court's instructions lacks merit.  (Issue 4)**

The Club's counsel correctly observed that if the Club is required to use a gradient boundary survey to locate the bed that it claims to own under the Small Bill, "the case is over" and "Lone Oak loses." 2 RR 18, 37. The Club's counsel stated that the slow flow of water in the Lone Oak Bayou near the coast is subject to the tides and does not create the qualified banks needed to locate the boundaries of a stream through a gradient boundary survey. 2 RR 39-40. The Club's counsel admitted that "there is no case if - - if we're constrained or required to prove that Lone Oak Bayou is greater than 30 feet by the gradient boundary method. It can't be done." 2 RR 19.

Attempting to avoid the evident loss, the Club characterized the issue as a "law of the case" problem and argued two inter-related exceptions to the law of the case apply here: (1) the Texas Supreme Court got the law wrong and its decision is "clearly erroneous" and (2) the facts were different and more fully developed at the bench trial than in the summary judgment stage justifying a departure from the law of the case doctrine. 2 RR 13-14. Even if the Texas Supreme Court's remand presents a law of the case issue, however, both exception arguments lack merit.

15

First, the Club's argument incorrectly assumes that the trial court had any discretion to ignore the instructions of the Texas Supreme Court on remand. The trial court simply lacks such discretion.

The law of the case doctrine is defined as "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). Application of the law of the case doctrine generally is discretionary "depending on the particular circumstances surrounding that case." *Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex. 2003). The doctrine applies only to questions of law, not questions of fact. *Id.*

However, a trial court has no discretion to ignore the ruling of the Texas Supreme Court on remand. The Texas Supreme Court's mandate imposes a mandatory duty on the lower court to comply with the higher court's judgment. *Phillips v. Bramblett,* 407 S.W.3d 229, 234 (Tex. 2013). Instructions given to the trial court on remand must be adhered to and enforced. *Hudson,* 711 S.W.2d at 630. The trial court lacked discretion to ignore the remand instructions from the Texas Supreme Court. *See Tex. Health and Human Servs. Comm'n v. El Paso Cnty. Hosp. Dist.,* 351 S.W.3d 460, 472-473 (Tex. 2011).

## A.    The Texas Supreme Court's opinion is not clearly erroneous.

The Texas Supreme Court's decision that requires a gradient boundary survey to locate any submerged, otherwise state-owned watercourse bed to be conveyed by the Small Bill is not clearly erroneous. The Texas Supreme Court's decision applies over 100 years of Texas jurisprudence. Texas law has long required the existence of qualified banks to perform a gradient boundary survey in order to locate the property line between the state-owned submerged bed of a stream or watercourse and privately-owned adjacent land. *See Brainard v. State*, 12 S.W.3d 6, 15-18 (Tex. 1999) (and cases cited therein). The crux of the matter here is the location of the submerged bed that the Club claims to own under the Small Bill. That claim legally requires the Club to prove that the Lone Oak Bayou has banks that confine the water and that are essential to conduct a gradient boundary survey— qualified banks that do not exist in the Lone Oak Bayou within the Barrow Survey.

A stream or watercourse that is navigable by statute is one that averages a width of thirty (30) feet from the mouth up so far as the stream maintains that average width. *See Bush*, 601 S.W.3d at 647 (discussing the Navigable Stream Statute). Along the way, there are likely segments of the stream much greater than 30 feet wide and other segments less than 30 feet wide or where no qualified bank

17

for performing a gradient boundary survey can be located. The key here is proof of the location of the boundaries of the submerged bed of the Lone Oak Bayou that the Club claims to own under the Small Bill. For a coastal, tidally-influenced submerged watercourse without qualified banks such that it is not a statutory navigable watercourse, like the Lone Oak Bayou, the proper method to determine the boundary between the privately-owned submerged bed and the state-owned submerged bed is the scientific tide gauge survey methodology. *Id.* at 657; *see also* 2 RR 150-151; 3 RR 10-11.

The boundary between privately-owned land and the state-owned submerged bed of a navigable stream is located by a gradient boundary survey. *Id.* In this case, the Texas Supreme Court noted that for the Club to own the tidally-influenced submerged bed it claims to own under the Small Bill, the Club must be able locate that bed with a gradient boundary survey. *Id.* A gradient boundary survey requires qualified banks. If qualified banks do not exist, as is admittedly the case here, the property line is determined by mean high tide. *Id.* There is nothing in the Texas Supreme Court's opinion on these legal concepts that is clearly erroneous.

### B. The more fully developed facts exception does not apply to justify ignoring the Texas Supreme Court's instructions.

There is no basis to support the Club's argument that the facts were materially different and more fully developed at the bench trial than at the summary judgment stage justifying a departure from the law of the case doctrine. 2 RR 13-14. Typically, the more fully developed facts exception to the law of the case doctrine allows a court to reconsider prior legal rulings in situations where parties change, amended pleadings raise new facts and issues on remand or the facts more fully developed are materially different and significant enough to potentially affect the legal conclusions reached in the prior determination. *See Hudson*, 711 S.W.2d at 630-631. None of those circumstances exist in this case. The facts developed on remand are not substantially different and there were no new parties added, nor new claims asserted. Nothing in the evidentiary record justifies a departure from what has been Texas law for over 100 years—the gradient boundary is necessary to locate the property line between privately-owned land and the state-owned submerged bed of a navigable stream or watercourse. Although here, a conveyance by the Small Bill would mean that the bed of a tidally-influenced navigable stream is owned by the private party, how to legally locate the boundary of any Small Bill-conveyed bed has not changed—a gradient boundary survey is required. If the gradient

boundary of the watercourse cannot be located, the property line is determined another way by locating mean high tide through a scientific tide gauge survey method. *Bush*, 601 S.W.3d at 657.

It was inappropriate for the trial court to reconsider the prior legal rulings of the Texas Supreme Court in this case under the more fully developed facts exception. The evidence at trial conclusively answered the Texas Supreme Court's questions on remand: was the Lone Oak Bayou a marsh or was it a stream or watercourse with banks from which a gradient boundary could locate its submerged bed. These factual questions and Club's pleadings did not change on remand.

The Club asserts that because qualified banks necessary to perform a gradient boundary survey do not exist in the Lone Oak Bayou, it is legally wrong to require the Club to locate the gradient boundary of the bed it claims to own under the Small Bill. In other words, the Club appears to argue that if the Texas Supreme Court knew a gradient boundary survey of Lone Oak Bayou could not be conducted because it lacks qualified banks, the Texas Supreme Court would not have required locating the gradient boundary of the Lone Oak Bayou.

To the contrary, the Texas Supreme Court knew well that there are two survey methodologies at play in this case to determine the property line between privately owned and state-owned land involving a tidally-influenced stream or

20

watercourse and application of the Small Bill. A gradient boundary survey locates any bed conveyed by the Small Bill and mean high tide locates the property line outside the gradient boundary. The Texas Court specifically stated: "Finally, our holding does not affect the State's ownership of land below mean high tide and outside the gradient boundary of a watercourse or navigable stream because those areas are not included within the Small Bill's scope." *Bush*, 601 S.W. 3d at 657.

The Texas Supreme Court's opinion remanded to the trial court to have the facts be more fully developed to determine whether Lone Oak Bayou had the type of banks required for a gradient boundary survey to be able to locate the bed that the Club claims the Small Bill conveyed or whether the bayou was " 'a marsh for which no banks exist,' *and for which 'a gradient boundary cannot be determined.'* " *Id.* at 658 (emphasis added). At the bench trial, the Club's surveyor admitted that Lone Oak Bayou was 80% marsh for which a gradient boundary cannot be determined. 2 RR 128-130; *see also* 3 RR 20, 4 RR Dx 17 and 17A(discussing historical topographical maps depicting Lone Oak Bayou as a marsh). Chandler also testified that the water regularly overtops the low "banks" he identified and marked and that those labeled "banks" do not contain the water within those banks, which are regularly overtopped by the daily tide. 2 RR 128-130, 144-146, 153-156. Of the 110 low banks characterized by Chandler, 99 are below mean high tide, are

21

overtopped by water on a regular basis and do not contain the flow of water. 3 RR 8-12. In other words, the undisputed evidence offered at trial conclusively answered the Texas Supreme Court's questions in its opinion: Lone Oak Bayou was 80% marsh without the type of banks from which a gradient boundary could be determined and located.[3] 2 RR 128-130.

Importantly, Lone Oak Bayou in the Barrow Survey does not constitute a navigable stream or watercourse to which the Small Bill applies because its low banks do not confine the flow of water to a definite channel and those banks are regularly overtopped by water from the ebb and flow of the tide. *Motl v. Boyd*, 286 S.W.458, 467 (Tex. 1926); *Brainard,* 17 S.W.3d at 15-16; *Oklahoma v. Texas*, 265 U.S. 500, 501 (1924). Both Chandler and the State's surveyor Nedra Townsend testified that to constitute a watercourse, the banks must contain the flow of water, without the water regularly overtopping the banks. 2 RR 151-153, 206-209; 3 RR 25-27. Lone Oak Bayou fails the test.

Therefore, in light of the binding instructions on remand, as the Club's counsel observed from this evidence, absent a change in the Texas Supreme Court's legal rulings: "Lone Oak loses." 2 RR 37. Just because the Club cannot prove the

---

[3]Although there are areas near the coast where a tidally influenced watercourse does qualified banks where you could perform a gradient boundary survey despite the tidal influence. 3 RR 29.

22

location of the gradient boundary of the bed of the Lone Oak Bayou it claims to own under the Small Bill does not mean the Club is entitled to change the law to locate the bed a different way using low banks that do not confine the water within those banks. The cases of *Oklahoma, Motl, Brainard* and *Bush* referenced earlier present insurmountable hurdles to the Club's position.

## IV. Legal sufficiency challenges to Findings of Fact 3-5 and 7-8 are established by admission that Lone Oak Bayou is 80% marsh and has no banks necessary to perform a gradient boundary survey and an incomplete chain of title contradicts Finding of Fact 14. [Issue 4]

The Commissioner challenges the legal sufficiency of the evidence at trial to support the factual findings contained in Findings of Fact 3, 4, 5, 7 and 8 as those findings are inconsistent with the law and in Finding of Fact 14, which is contradicted by the uncontested evidence. CR 1141-1146. Notably, some of these designated "Findings of Fact" are a mix of factual findings and legal conclusions. In any case, all factual findings challenged other than Finding of Fact 14 are legally defeated by the undisputed evidence that the Lone Oak Bayou does not have the type of banks required to determine the gradient boundary of Lone Oak Bayou in order to establish the width of Lone Oak Bayou in the Barrow Survey and locate the bayou's submerged bed as required by the Texas Supreme Court.

23

There is no legally sufficient evidence to support Findings of Fact 3, 4, 5, 7 and 8. All of these findings are based on a false legal premise that the banks and bed of the Lone Oak Bayou can be determined and located in some way other than by the gradient boundary survey methodology required by the Texas Supreme Court. The undisputed evidence is that the Lone Oak Bayou in the Barrow Survey does not have the type of banks necessary to perform a gradient boundary survey and that the low "banks" plotted by the Club's surveyor do not contain the water which diffuses beyond the identified low banks throughout marsh on a daily basis at high tide. 2 RR 12-13, 16, 18, 37-41, 107, 128, 130, 146, 151-156, 164-165, 188, 208-209, 220-222; 3 RR 7-12, 17-20, 109, 125-226. Therefore, as a matter of law, the Lone Oak Bayou is not a watercourse subject to the Small Bill and its bed cannot be properly located and measured, contrary to these findings.

Finding of Fact 14 incorrectly provides that the Club established a chain of conveyances to the surface estate of the Barrow Survey that totals 160 acres. CR 1144. To the contrary, the Club's chain of title documents do not show the Club's title to the interests of Laura Smith in the 14-acre tract of the Barrow Survey described in the title documents. As shown by Plaintiff's Exhibit 87, Laura Smith inherited an undivided 1/5 interest in a 14-acre tract of the Barrow Survey from her mother, Louise Standley, in 1953. 4 RR Px 87. As shown by Plaintiffs' Exhibits 97-

24

104, Laura Smith died without a will leaving seven legal heirs. 4 RR Px 97-104. There are no chain of title conveyances from six of those seven heirs of their inherited interest in the 14-acre tract previously owned by Laura Smith. These six heirs are Perry Edgar Smith, Elsie Smith Miles, Velma Smith Otter, Mary Smith Perry, Wilma Jean Smith and Patricia Ann Smith Hampton. Therefore, no evidence supports the finding that the entire surface of the Barrow Survey was conveyed to the Club.

## PRAYER FOR RELIEF

For the reasons stated herein, Commissioner Buckingham asks the Court to reverse the Final Judgment of the trial court and render judgment in Appellant's favor that the Club take nothing by its *ultra vires* trespass to try title, and find that the Commissioner did not act *ultra vires* by claiming that the State owned the submerged bed of the Lone Oak Bayou below mean high tide in the Barrow Survey. Commissioner Buckingham further seeks such other relief as the Court deems appropriate.

Respectfully submitted,

KEMP SMITH LLP
221 North Kansas, Suite 1700
El Paso, Texas 79901-1441
(915) 533-4424
(915) 546-5360 (FAX)

By: _____
Ken Slavin
State Bar No. 18496100
ken.slavin@kempsmith.com

Deborah Trejo
State Bar No. 24007004
deborah.trejo@kempsmith.com
KEMP SMITH LLP
1301 Nueces St., Suite 100
Austin, Texas 78701
Telephone: (512) 226-0005
Facsimile: (512) 320-5431

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word as part of Microsoft 365 Apps for enterprise with a 14-point font conventional typeface and 12-point font for any footnotes. Excluding the sections of the document listed in Rule 9.4(i)(1) of the Texas Rules of Appellate Procedure, this document contains 5,716 words, as determined by the computer software's word-count function.

_____
KEN SLAVIN

# CERTIFICATE OF SERVICE

Pursuant to Rule 9.5 of the Texas Rules of Appellate Procedure, I hereby certify that a true and correct copy of the foregoing Brief of Appellant was served upon the following counsel of record for Appellee, by electronic mail and/or electronic filing on this the 22nd day of December, 2025.

Edgar R. Norwood
The Norwood Law Firm
340 Main St.
Liberty, TX 77575-4806
enorwood@ednorwoodlaw.com

_____
KEN SLAVIN

| | | |
|---|---|---|
| LONE OAK CLUB, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | OF CHAMBERS COUNTY, TEXAS |
| DAWN BUCKINGHAM, M.D., as the | § | |
| LAND COMMISSIONER OF THE TEXAS | § | |
| GENERAL LAND OFFICE, | § | |
| | § | |
| Defendant | § | 253RD JUDICIAL DISTRICT |

## FINAL JUDGMENT

On May 28, 2025, the above-entitled and numbered cause came on for trial, without a jury, before the undersigned judge with E. R. Norwood, appearing as attorney for the Plaintiff, Lone Oak Club, LLC, and with Ken Slavin and Deborah C. Trejo, appearing as attorneys for Defendant, Dawn Buckingham, M.D., solely in her capacity as Commissioner of the Texas General Land Office. The Court, after examining the parties' pleadings, hearing the evidence, and considering the argument of counsel, is of the opinion that Plaintiff should recover from Defendant the lands and premises in controversy, which are defined below.

In this Judgment, the following definitions apply:

"**Barrow Survey**" means the Sophronia Barrow Survey, Abstract 46, Chambers County, Texas, which survey was granted to Sohpronia Barrow in a Patent from Edmund J. Davis, Governor of the State of Texas, dated January 9, 1872, recorded at Book L, Page 299 in the Official Public Records of Chambers County, Texas, and more particularly described as follows:

One hundred and sixty (160) acres of land situated on the East side of Galveston Bay about 15 miles South 8° East from the town of Wallisville by virtue of her affidavit before the District Clerk in and for said County dated Dec. 20, 1871 in accordance with the provisions of an Act affirmed March 24, 1871. Beginning on the South boundary line of J. S. Roberts League, surveyed 1330 varas East of his Southwest corner. Thence South at 455 varas edge of marsh 950 varas corner in said marsh. Thence West 950 varas corner a post. Thence North 950 varas corner stake on the North side of said Bayou. Thence East with said Roberts line at 95 varas Orr's Bayou 12 varas wide runs Southwest 230 varas same Bayou runs Northwest 950 varas to the Beginning.

"**Lone Oak Bayou**" means the body of water located in Chambers County commonly known as Lone Oak Bayou, being the same bayou referred to in the original Patent for the Barrow Survey as "Orr's Bayou", identified as "Lone Oak Bayou", and includes the wide portions of the bayou sometimes referred to as lakes, which bayou and lakes are shown on Attachment 1, hereto.

"**The Bed of Lone Oak Bayou, located in the Barrow Survey**" means the area between the evident banks of Lone Oak Bayou as it traverses the Barrow Survey, which includes the wide portion of the bayou sometimes referred to as Lone Oak Lake, which evident banks are natural monuments of the location of Lone Oak Bayou, and its bed, within the Barrow Survey, which evident banks are shown on Attachment 2, hereto, which is a map of a survey conducted on the ground that identifies the evident banks of Lone Oak Bayou overlaid on an aerial image of the Barrow Survey and surrounding surveys. Attachment 3, hereto, lists the coordinates for evident bank points within point numbers 524 through 688 of Lone Oak Bayou that were surveyed within the Barrow Survey and a portion of the evident banks of the bayou immediately south of the Barrow Survey.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED, that Plaintiff recover from Defendant title to and possession of The Bed of Lone Oak Bayou located in the Barrow Survey, which is defined above – save and except the following:

2

1. The State's title, right, or interest, in and to the sand and gravel lying within the bed of Lone Oak Bayou;

2. The mineral estate underlying the bed of Lone Oak Bayou; and

3. The right of the public to navigate and to use the waters of Lone Oak Bayou.

IT IS, FURTHER, ORDERED, ADJUDGED, AND DECREED, that Plaintiff may have its writ of possession to the bed of Lone Oak Bayou located in the Barrow Survey, which is defined above – save and except the following:

1. The State's title, right, or interest, in and to the sand and gravel lying within the bed of Lone Oak Bayou;

2. The mineral estate underlying the bed of Lone Oak Bayou; and

3. The right of the public to navigate and to use the waters of Lone Oak Bayou.

All costs of Court are taxed against the Defendant, which, if not timely paid, let execution issue. All relief not expressly granted herein is denied. This Judgment is a final judgment that disposes of all claims and all parties in the above-captioned action and is appealable.

SIGNED ON _July 7th_, 2025.

Honorable Chap B. Cain
Judge of the 253rd District Court,
Chambers County, Texas

**APPROVED:**

THE NORWOOD LAW FIRM
By: _E.R. Norwood_
    E.R. Norwood
    State Bar No. 15113500
    340 Main Street
    Liberty, Texas 77575
    Telephone: (936) 336-3700
    Facsimile: (936) 336-7634
    enorwood@ednorwoodlaw.com

ATTORNEY FOR PLAINTIFF, LONE OAK CLUB, LLC

FILED
THIS THE 7 DAY OF July
A.D. 20 25 AT 3:15 O'CLOCK p M
PATTI L. HENRY
DISTRICT CLERK, CHAMBERS COUNTY, TEXAS
BY _____ DEPUTY

3

**NOT APPROVED AS TO FORM OR SUBSTANCE:**

KEMP SMITH LLP

By: _____

Ken Slavin
State Bar No. 18496100
Ken.Slavin@kempsmith.com
Deborah C. Trejo
State Bar No. 24007004
2905 San Gabriel St., Suite 205
Austin, Texas 78705
Deborah.Trejo@kempsmith.com

ATTORNEYS FOR DEFENDANT, DAWN BUCKINGHAM, M.D.,
AS COMMISSIONER OF THE TEXAS GENERAL LAND OFFICE

4



Lone Oak Bayou
Chambers County



CHAMBERS SURVEYING & MAPPING

ATTACHMENT 3

| Point | Bearing | Distance | Northing | Easting | Elevation |
|---|---|---|---|---|---|
| 1 80D | | | -3866.43743 | -6053.71958 | 13.85 |
| 2 80D @ BRIDGE | | | 3545.41016 | 11369.19772 | 3.40 |
| 3 DISK E1139 | | | 9934.67904 | 9859.66299 | 2.65 |
| 3S DISK 1139 | | | 19924.62100 | 19864.79900 | 2.69 |
| 4 MIKE #1 | | | 10000.01100 | 10000.02788 | 4.89 |
| 5 MIKE #2 | | | 9473.72346 | 9633.65348 | 3.84 |
| 8 1/2" CP | | | 5432.07022 | 11378.55388 | 3.85 |
| 8S MIKE #8 | | | 15544.74100 | 21707.93000 | -2.28 |
| 9 BASE | | | 4415.08155 | 6410.18287 | 4.68 |
| 10 MIKE #1 | | | 10000.00000 | 10000.00000 | 3.85 |
| 11 80D @ BASE | | | 4415.08155 | 6410.18287 | 4.68 |
| 12 MIKE #2 | | | 9473.73937 | 9633.68272 | 3.85 |
| 14 | | | 6355.98819 | 4805.05327 | 3.85 |
| 50 FND WELLS CAP | | | 10049.92486 | 10030.18834 | 3.05 |
| 51S ROW MON | | | 19957.56000 | 20060.45800 | -0.53 |
| 53 SWCR TR | | | 3650.63720 | -2190.68068 | 0.00 |
| 54 SET 1 1/2" PVC PIPE | | | 3715.51091 | 638.66641 | 0.00 |
| 100 BANK | | | 3289.58489 | 11245.47437 | 0.72 |
| 101 TOE | | | 3289.43098 | 11246.12588 | -0.23 |
| 102 CL | | | 3275.88869 | 11254.02956 | -1.14 |
| 103 TOE | | | 3252.62068 | 11256.23898 | -0.66 |
| 104 BANK | | | 3250.44179 | 11256.62415 | 0.16 |
| 105 GRASS WATER MARK | | | 3283.82007 | 11237.56702 | 1.36 |
| 106 CL | | | 3244.58147 | 11207.95735 | 0.82 |
| 107 CL | | | 3147.58256 | 11176.05130 | 1.11 |
| 108 CL | | | 3103.15579 | 11157.65220 | 1.07 |
| 109 BANK | | | 3106.57516 | 11148.15724 | 1.04 |
| 110 TOE | | | 3106.23272 | 11148.34276 | 0.06 |
| 111 CL | | | 3094.85405 | 11156.04264 | -0.69 |
| 112 TOE | | | 3088.06163 | 11169.76293 | 0.13 |
| 113 BANK | | | 3087.62385 | 11170.21020 | 0.99 |
| 114 CL | | | 3065.91409 | 11127.01941 | 1.21 |
| 115 CL | | | 3002.44112 | 11076.38186 | 1.14 |
| 116 CL | | | 2904.31516 | 11044.68219 | 1.06 |
| 117 CL | | | 2859.65626 | 11053.81745 | 1.18 |
| 118 CL | | | 2783.34120 | 11111.93003 | 1.15 |
| 119 CL | | | 2718.53559 | 11179.63227 | 1.19 |
| 120 CL | | | 2691.26980 | 11256.45680 | 1.12 |
| 121 CL | | | 2628.76159 | 11306.61285 | 0.88 |
| 122 CL | | | 2550.88343 | 11322.06894 | 0.85 |
| 123 CL | | | 2460.46522 | 11307.75751 | 0.87 |
| 124 CL | | | 2376.87124 | 11265.34184 | 0.81 |
| 125 CL | | | 2304.62042 | 11242.91037 | 0.88 |
| 126 CL | | | 2249.15720 | 11172.09110 | 0.86 |
| 127 CL | | | 2219.55194 | 11100.78984 | 0.84 |
| 128 CL | | | 2191.75961 | 11060.66272 | 0.83 |

MC000972

| Point | Bearing | Distance | Northing | Easting | Elevation |
|-------|---------|----------|----------|---------|-----------|
| 129 CL | | | 2169.21823 | 11006.93024 | 0.79 |
| 130 CL | | | 2164.72082 | 10942.21209 | 0.77 |
| 131 CL | | | 2179.01713 | 10841.02813 | 0.75 |
| 132 BANK | | | 2316.42106 | 10711.74108 | 0.91 |
| 133 TOE | | | 2314.79349 | 10711.14082 | -0.39 |
| 134 CL | | | 2287.88916 | 10718.57101 | -1.90 |
| 135 TOE | | | 2256.17750 | 10701.71808 | -0.38 |
| 136 BANK | | | 2255.35594 | 10701.42139 | 0.90 |
| 137 CL | | | 2282.88774 | 10662.70869 | 1.01 |
| 138 CL | | | 2284.10599 | 10569.56562 | 1.03 |
| 139 CL | | | 2279.39464 | 10434.17578 | 1.03 |
| 140 CL | | | 2297.99088 | 10372.00617 | 1.02 |
| 141 CL | | | 2314.01352 | 10324.16604 | 1.07 |
| 142 CL | | | 2347.44750 | 10228.81492 | 1.03 |
| 143 CL | | | 2360.92021 | 10162.84464 | 1.03 |
| 144 CL | | | 2345.23732 | 10068.26348 | 1.07 |
| 145 CL | | | 2287.35669 | 9948.02644 | 1.07 |
| 146 CL | | | 2247.84826 | 9877.25756 | 0.99 |
| 147 CL | | | 2282.56012 | 9759.76267 | 1.06 |
| 148 CL | | | 2333.11430 | 9643.84304 | 1.07 |
| 149 CL | | | 2354.43592 | 9576.22663 | 1.05 |
| 150 CL | | | 2374.76160 | 9488.63043 | 1.00 |
| 151 CL | | | 2382.16721 | 9370.54008 | 0.98 |
| 152 CL | | | 2381.03435 | 9273.38992 | 0.88 |
| 153 CL | | | 2385.36939 | 9196.69888 | 0.93 |
| 154 CL | | | 2383.25502 | 9107.37901 | 0.89 |
| 155 CL | | | 2339.71905 | 8955.86357 | 0.87 |
| 156 CL | | | 2333.96571 | 8886.01019 | 0.85 |
| 157 CL | | | 2315.89971 | 8821.84725 | 0.83 |
| 158 CL | | | 2279.81873 | 8777.94276 | 0.92 |
| 159 CL | | | 2228.67123 | 8761.15995 | 0.94 |
| 160 CL | | | 2174.83617 | 8751.50117 | 0.89 |
| 161 CL | | | 2133.65943 | 8709.10817 | 0.90 |
| 162 CL | | | 2144.61344 | 8591.18297 | 0.89 |
| 163 CL | | | 2193.27498 | 8529.95590 | 0.79 |
| 164 BANK | | | 2331.19732 | 8462.00489 | 0.55 |
| 165 TOE | | | 2330.78279 | 8461.66777 | -0.48 |
| 166 CL | | | 2315.30657 | 8416.43402 | -2.09 |
| 167 TOE | | | 2299.40157 | 8372.82734 | -0.27 |
| 168 BANK | | | 2299.35405 | 8372.18817 | 0.32 |
| 169 CL | | | 2402.83922 | 8391.87361 | 1.01 |
| 170 CL | | | 2489.49671 | 8347.49164 | 0.92 |
| 171 CL | | | 2583.05011 | 8288.04234 | 0.93 |
| 172 CL | | | 2743.69075 | 8142.20241 | 0.88 |
| 173 BANK | | | 2881.27812 | 8236.75547 | 0.73 |
| 174 TOE | | | 2881.08400 | 8235.28239 | -0.35 |

MC000973

| Point | Bearing | Distance | Northing | Easting | Elevation |
|---|---|---|---|---|---|
| 175 CL | | | 2916.08800 | 8212.50289 | -2.05 |
| 176 TOE | | | 2940.96902 | 8204.71522 | -0.39 |
| 177 BANK | | | 2943.11368 | 8203.70089 | 0.93 |
| 178 CL | | | 2796.19578 | 7911.99484 | -0.38 |
| 179 CL | | | 2963.23729 | 7714.24343 | -0.41 |
| 180 CL | | | 3109.62610 | 7487.08198 | -0.39 |
| 181 BANK | | | 2494.59663 | 7182.97318 | 0.40 |
| 182 TOE | | | 2494.82150 | 7183.35359 | -0.52 |
| 183 TOE | | | 3177.95211 | 7705.65230 | -0.12 |
| 184 BANK | | | 3179.87286 | 7706.50762 | 0.76 |
| 185 BANK | | | 3304.60662 | 7317.19174 | 0.59 |
| 186 TOE | | | 3304.20831 | 7316.19405 | -0.21 |
| 187 CL | | | 3291.11916 | 7242.39431 | -2.09 |
| 188 TOE | | | 3269.63807 | 7185.15781 | -0.10 |
| 189 BANK | | | 3268.25333 | 7184.63746 | 0.72 |
| 190 CL | | | 3349.92600 | 7202.84763 | -0.42 |
| 191 CL | | | 3413.65057 | 7111.76234 | -0.47 |
| 192 CL | | | 3414.12219 | 7039.24271 | -0.47 |
| 193 CL | | | 3396.75051 | 6995.33129 | -0.44 |
| 194 CL | | | 3363.09981 | 6924.51937 | -0.44 |
| 195 CL | | | 3340.41839 | 6841.69124 | -0.45 |
| 196 CL | | | 3348.45600 | 6752.68738 | -0.46 |
| 197 CL | | | 3359.94992 | 6683.19946 | -0.44 |
| 198 CL | | | 3414.62178 | 6599.62513 | -0.47 |
| 199 CL | | | 3453.21383 | 6501.23800 | -0.47 |
| 200 CL | | | 3447.42759 | 6414.36091 | -0.50 |
| 201 CL | | | 3428.81253 | 6360.25971 | -0.46 |
| 202 CL | | | 3374.07351 | 6341.18596 | -0.46 |
| 203 CL | | | 3275.88293 | 6352.79283 | -0.51 |
| 204 CL | | | 3234.35346 | 6294.14385 | -0.44 |
| 205 CL | | | 3231.78128 | 6222.93681 | -0.45 |
| 206 CL | | | 3183.72039 | 6173.76585 | -0.45 |
| 207 CL | | | 3107.24901 | 6147.11444 | -0.44 |
| 208 CL | | | 3027.81432 | 6128.10832 | -0.47 |
| 209 BANK | | | 3022.39671 | 6186.62205 | 0.98 |
| 210 TOE | | | 3020.86843 | 6186.29576 | -0.33 |
| 211 CL | | | 2980.26218 | 6176.72471 | -5.10 |
| 212 TOE | | | 2945.78962 | 6169.69964 | -0.59 |
| 213 BANK | | | 2943.71520 | 6169.86283 | 0.68 |
| 214 CL | | | 2882.94817 | 6290.70194 | -0.49 |
| 215 CL | | | 2840.45338 | 6247.74033 | -0.42 |
| 216 CL | | | 2786.82984 | 6204.65701 | -0.41 |
| 217 CL | | | 2651.39648 | 6178.80183 | -0.46 |
| 218 CL | | | 2609.05966 | 6139.54961 | -0.41 |
| 219 CL | | | 2629.24519 | 6085.85542 | -0.40 |
| 220 CL | | | 2681.82997 | 6009.87313 | -0.41 |

MC000974

| Point | Bearing | Distance | Northing | Easting | Elevation |
|---|---|---|---|---|---|
| 221 CL | | | 2723.58135 | 5939.48085 | -0.49 |
| 222 CL | | | 2761.96683 | 5905.87307 | -0.46 |
| 223 CL | | | 2817.72590 | 5867.70685 | -0.43 |
| 224 CL | | | 2857.02493 | 5800.11022 | -0.43 |
| 225 CL | | | 2917.27107 | 5723.68934 | -0.47 |
| 226 CL | | | 2969.55368 | 5714.86374 | -0.43 |
| 227 CL | | | 3028.33782 | 5691.03023 | -0.43 |
| 228 CL | | | 3033.39182 | 5606.04052 | -0.45 |
| 229 CL | | | 3011.90674 | 5529.39607 | -0.44 |
| 230 CL | | | 3017.42842 | 5465.72821 | -0.48 |
| 231 CL | | | 3057.99926 | 5402.11690 | -0.42 |
| 232 CL | | | 3137.50099 | 5339.77742 | -0.48 |
| 233 CL | | | 3266.81234 | 5267.67152 | -0.46 |
| 234 CL | | | 3395.27132 | 5198.66674 | -0.44 |
| 235 CL | | | 3481.23836 | 5152.74333 | -0.44 |
| 236 CL | | | 3642.63303 | 5049.68222 | -0.44 |
| 237 CL | | | 3721.30402 | 4984.81243 | -0.39 |
| 238 CL | | | 3724.70297 | 4906.60711 | -0.40 |
| 239 CL | | | 3649.28467 | 4874.36961 | -0.41 |
| 240 CL | | | 3576.87220 | 4879.79750 | -0.44 |
| 241 CL | | | 3486.67850 | 4843.85789 | -0.43 |
| 242 CL | | | 3516.99369 | 4771.25392 | -0.37 |
| 243 CL | | | 3673.91079 | 4705.53575 | -0.45 |
| 244 CL | | | 3797.96177 | 4667.27139 | -0.45 |
| 245 CL | | | 3952.60518 | 4646.16518 | -0.48 |
| 246 CL | | | 4004.35657 | 4576.34351 | -0.43 |
| 247 CL | | | 3977.72055 | 4419.71263 | -0.47 |
| 248 CL | | | 3884.60736 | 4204.82089 | -0.52 |
| 249 CL | | | 3810.46267 | 4093.02952 | -0.48 |
| 250 CL | | | 3732.27836 | 4043.38201 | -0.44 |
| 251 CL | | | 3704.99067 | 3959.78600 | -0.44 |
| 252 CL | | | 3729.42928 | 3897.00171 | -0.44 |
| 253 CL | | | 3743.79932 | 3808.90897 | -0.47 |
| 254 CL | | | 3692.51704 | 3757.10213 | -0.44 |
| 255 CL | | | 3617.14333 | 3776.63466 | -0.46 |
| 256 CL | | | 3567.64285 | 3859.62448 | -0.47 |
| 257 CL | | | 3552.66611 | 3919.69741 | -0.50 |
| 258 CL | | | 3472.31173 | 4008.30765 | -0.50 |
| 259 CL | | | 3401.42917 | 3995.64695 | -0.46 |
| 260 CL | | | 3321.82830 | 3951.13985 | -0.52 |
| 261 CL | | | 3209.22755 | 3833.61140 | -0.47 |
| 262 CL | | | 3189.33100 | 3722.12504 | -0.44 |
| 263 CL | | | 3178.24083 | 3646.49217 | -0.44 |
| 264 BANK | | | 3247.09015 | 3555.44662 | 1.00 |
| 265 TOE | | | 3246.37354 | 3554.93501 | -0.50 |

MC000975

| Point | Bearing | Distance | Northing | Easting | Elevation |
|---|---|---|---|---|---|
| 266 CL | | | 3217.61453 | 3528.01757 | -7.07 |
| 267 TOE | | | 3195.64885 | 3500.68532 | -0.25 |
| 268 BANK | | | 3194.27376 | 3499.79971 | 0.92 |
| 269 CL | | | 3261.73953 | 3471.67976 | -0.44 |
| 270 CL | | | 3346.48036 | 3376.24216 | -0.44 |
| 271 CL | | | 3433.05595 | 3372.15245 | -0.44 |
| 272 CL | | | 3512.00629 | 3403.94228 | -0.45 |
| 273 CL | | | 3592.15642 | 3394.91997 | -0.45 |
| 274 CL | | | 3666.53415 | 3345.64266 | -0.44 |
| 275 CL | | | 3718.38832 | 3326.10933 | -0.50 |
| 276 CL | | | 3838.40183 | 3339.85101 | -0.45 |
| 277 CL | | | 3913.74609 | 3325.59036 | -0.45 |
| 278 CL | | | 3990.64564 | 3377.01192 | -0.44 |
| 279 CL | | | 3973.97382 | 3467.92535 | -0.46 |
| 280 BANK | | | 3851.42660 | 3661.22095 | 1.18 |
| 281 TOE | | | 3851.98830 | 3659.86028 | -2.92 |
| 282 CL | | | 3896.60319 | 3630.75366 | -12.13 |
| 283 TOE | | | 3925.11803 | 3592.95406 | -1.04 |
| 284 BANK | | | 3924.20915 | 3587.67975 | 0.17 |
| 285 CL | | | 4054.49242 | 3575.69874 | -0.38 |
| 286 CL | | | 4138.05379 | 3539.87381 | -0.44 |
| 287 CL | | | 4213.15877 | 3587.95964 | -0.43 |
| 288 CL | | | 4263.97682 | 3618.16414 | -0.46 |
| 289 CL | | | 4378.76134 | 3615.84585 | -0.42 |
| 290 CL | | | 4437.47785 | 3571.03357 | -0.43 |
| 291 CL | | | 4496.34670 | 3513.76825 | -0.45 |
| 292 CL | | | 4539.78244 | 3463.25168 | -0.46 |
| 293 CL | | | 4564.30939 | 3403.29134 | -0.46 |
| 294 CL | | | 4555.21492 | 3341.46472 | -0.43 |
| 295 CL | | | 4506.05857 | 3269.19041 | -0.43 |
| 296 CL | | | 4476.68153 | 3243.54028 | -0.44 |
| 297 CL | | | 4425.52558 | 3201.43046 | -0.43 |
| 298 CL | | | 4380.96235 | 3161.54022 | -0.40 |
| 299 CL | | | 4323.05919 | 3103.55120 | -0.42 |
| 300 CL | | | 4265.31255 | 3044.66921 | -0.43 |
| 301 CL | | | 4161.37798 | 2985.38964 | -0.44 |
| 302 CL | | | 4092.45836 | 3006.48690 | -0.46 |
| 303 CL | | | 4019.50065 | 3009.00429 | -0.47 |
| 304 CL | | | 3970.75658 | 2979.06772 | -0.43 |
| 305 CL | | | 4012.91977 | 2858.69946 | -0.46 |
| 306 CL | | | 4051.17915 | 2829.10717 | -0.44 |
| 307 CL | | | 4120.11220 | 2766.69293 | -0.44 |
| 308 CL | | | 4234.02464 | 2668.15597 | -0.39 |
| 309 CL | | | 4305.84689 | 2602.45663 | -0.38 |
| 310 CL | | | 4304.66321 | 2544.43290 | -0.38 |
| 311 CL | | | 4271.36239 | 2500.94321 | -0.35 |

MC000976

| Point | Bearing | Distance | Northing | Easting | Elevation |
|---|---|---|---|---|---|
| 312 CL | | | 4238.70904 | 2462.33974 | -0.36 |
| 313 CL | | | 4194.31452 | 2424.03702 | -0.39 |
| 314 CL | | | 4107.15398 | 2393.37660 | -0.36 |
| 315 CL | | | 3970.37347 | 2280.83248 | -0.37 |
| 316 BANK | | | 3863.30064 | 2068.62208 | 0.39 |
| 317 TOE | | | 3862.88589 | 2070.00252 | -0.30 |
| 318 CL | | | 3505.97474 | 2404.40733 | -0.97 |
| 319 TOE | | | 3163.20111 | 2857.89283 | 0.36 |
| 320 BANK | | | 3162.36866 | 2859.00710 | 1.14 |
| 321 CL | | | 3478.33378 | 2136.58726 | -0.42 |
| 322 CL | | | 3493.59321 | 2088.40659 | -0.41 |
| 323 CL | | | 3510.97940 | 2024.13615 | -0.42 |
| 324 CL | | | 3590.79923 | 1912.34825 | -0.46 |
| 325 CL | | | 3634.92880 | 1844.33069 | -0.44 |
| 326 CL | | | 3676.20952 | 1759.87166 | -0.44 |
| 327 CL | | | 3688.71873 | 1689.42922 | -0.42 |
| 328 CL | | | 3669.72109 | 1615.57155 | -0.44 |
| 329 CL | | | 3605.65049 | 1564.16639 | -0.38 |
| 330 CL | | | 3494.34667 | 1536.56483 | -0.39 |
| 331 CL | | | 3375.97563 | 1506.78822 | -0.36 |
| 332 CL | | | 3312.69391 | 1476.74142 | -0.37 |
| 333 CL | | | 3289.83560 | 1409.71946 | -0.44 |
| 334 CL | | | 3328.14147 | 1362.62097 | -0.43 |
| 335 CL | | | 3380.09440 | 1317.39145 | -0.43 |
| 336 CL | | | 3420.35737 | 1280.03257 | -0.43 |
| 337 CL | | | 3463.90010 | 1226.44764 | -0.41 |
| 338 CL | | | 3499.96386 | 1186.51073 | -0.47 |
| 339 CL | | | 3540.22023 | 1124.47169 | -0.47 |
| 340 CL | | | 3554.05691 | 1070.79065 | -0.42 |
| 341 CL | | | 3546.13402 | 986.95788 | -0.39 |
| 342 CL | | | 3491.15958 | 912.44241 | -0.38 |
| 343 CL | | | 3433.21316 | 867.41673 | -0.39 |
| 344 CL | | | 3359.89764 | 817.82636 | -0.39 |
| 345 CL | | | 3232.28660 | 747.11412 | -0.43 |
| 346 BANK | | | 3061.44298 | 631.57251 | 0.79 |
| 347 TOE | | | 3060.62355 | 633.29034 | -0.53 |
| 348 CL | | | 3061.74422 | 676.96528 | -6.13 |
| 349 BANK | | | 3057.35394 | 720.20527 | 0.76 |
| 350 TOE | | | 3058.97418 | 714.13023 | -3.08 |
| 351 CL | | | 2915.41279 | 577.65002 | -6.50 |
| 352 CL | | | 2961.86512 | 553.63793 | -6.46 |
| 353 CL | | | 3005.44660 | 532.55030 | -6.51 |
| 354 CL | | | 3048.74718 | 487.88746 | -6.52 |
| 355 CL | | | 3079.42593 | 438.12579 | -6.51 |
| 356 CL | | | 3077.94435 | 357.54130 | -6.46 |
| 357 CL | | | 3008.48314 | 296.29191 | -6.49 |

MC000977

| Point | Bearing | Distance | Northing | Easting | Elevation |
|---|---|---|---|---|---|
| 358 CL | | | 2983.34904 | 232.44848 | -6.47 |
| 359 CL | | | 3049.75763 | 159.40088 | -6.52 |
| 360 CL | | | 3145.50464 | 123.90226 | -6.57 |
| 361 CL | | | 3211.47719 | 91.13608 | -6.55 |
| 362 CL | | | 3271.34046 | 46.72548 | -6.53 |
| 363 CL | | | 3330.71240 | -38.50258 | -6.51 |
| 364 CL | | | 3392.25470 | -76.55684 | -6.50 |
| 365 CL | | | 3458.12887 | -56.70817 | -6.47 |
| 366 CL | | | 3497.23674 | -12.65058 | -6.45 |
| 367 CL | | | 3580.87386 | 49.70731 | -6.49 |
| 368 CL | | | 3643.68795 | 72.80552 | -6.51 |
| 369 CL | | | 3723.00517 | 110.48076 | -6.54 |
| 370 CL | | | 3768.79908 | 132.01388 | -6.54 |
| 371 CL | | . | 3819.27301 | 155.29486 | -6.53 |
| 372 CL | | | 3891.78875 | 185.92547 | -6.55 |
| 373 CL | | | 4067.77321 | 171.76971 | -6.53 |
| 374 CL | | | 4129.60787 | 191.83444 | -6.48 |
| 375 CL | | | 4184.08323 | 223.63584 | -6.51 |
| 376 CL | | | 4232.38675 | 252.48039 | -6.52 |
| 377 CL | | | 4311.75597 | 301.10256 | -6.46 |
| 378 CL | | | 4377.60399 | 346.29879 | -6.50 |
| 379 CL | | | 4443.67096 | 391.53107 | -6.50 |
| 380 CL | | | 4509.67617 | 420.86154 | -6.51 |
| 381 CL | | | 4572.77987 | 428.79250 | -6.50 |
| 382 CL | | | 4674.82703 | 397.27983 | -6.51 |
| 383 CL | | | 4814.26551 | 338.77750 | -6.55 |
| 384 CL | | | 4867.10339 | 314.88128 | -6.53 |
| 385 CL | | | 4949.09402 | 255.13015 | -6.55 |
| 386 CL | | | 5000.71637 | 236.65573 | -6.51 |
| 387 CL | | | 5067.77865 | 254.62603 | -6.51 |
| 388 BANK | | | 5101.75457 | 386.37183 | 0.86 |
| 389 TOE | | | 5106.83893 | 384.22080 | -1.21 |
| 390 CL | | | 5195.02054 | 392.50612 | -5.09 |
| 391 TOE | | | 5230.22723 | 384.90780 | -7.16 |
| 392 CL | | | 5280.82626 | 517.32737 | -0.44 |
| 393 CL | | | 5335.38136 | 513.63913 | -0.41 |
| 394 CL | | | 5368.95827 | 466.12074 | -0.50 |
| 395 CL | | | 5382.83849 | 380.97011 | -0.47 |
| 396 CL | | | 5396.73449 | 320.63468 | -0.43 |
| 397 CL | | | 5453.98112 | 297.35555 | -0.41 |
| 398 CL | | | 5508.77647 | 281.86341 | -0.42 |
| 399 CL | | | 5547.29342 | 251.36749 | -0.40 |
| 400 CL | | | 5593.64168 | 168.18333 | -0.41 |
| 401 CL | | | 5628.14630 | 115.18900 | -0.40 |
| 402 CL | | | 5677.58270 | 94.75500 | -0.41 |
| 403 CL | | | 5769.97336 | 109.68087 | -0.42 |

MC000978

| Point | Bearing | Distance | Northing | Easting | Elevation |
|---|---|---|---|---|---|
| 404 CL | | | 5840.83839 | 127.47796 | -0.46 |
| 405 CL | | | 5890.82265 | 135.32015 | -0.47 |
| 406 CL | | | 5956.52465 | 140.35184 | -0.43 |
| 407 CL | | | 6011.96280 | 103.95594 | -0.43 |
| 408 CL | | | 6027.33628 | 35.39735 | -0.41 |
| 409 BANK | | | 6000.16158 | -92.09827 | 1.01 |
| 410 TOE | | | 5991.90833 | -73.85245 | -7.04 |
| 411 CL | | | 5969.32482 | -53.79462 | -6.03 |
| 412 TOE | | | 5917.59246 | -41.77039 | -3.05 |
| 413 BANK | | | 5908.51961 | -32.99653 | 0.90 |
| 414 CL | | | 5881.77768 | -131.38212 | 0.65 |
| 415 CL | | | 5842.71498 | -234.39031 | 0.66 |
| 416 CL | | | 5836.57349 | -388.29168 | 0.68 |
| 417 WATER LINE ON GRASS | | | 5904.95874 | -413.18901 | 1.34 |
| 418 WATER LINE ON GRASS | | | 5947.70482 | -477.39630 | 1.62 |
| 419 WATER LINE ON BRIDGE | | | 5947.92485 | -510.36099 | 1.25 |
| 420 BANK | | | 5950.73022 | -485.19147 | 1.42 |
| 421 TOE | | | 5944.16582 | -485.08279 | -0.65 |
| 422 CL | | | 5883.05596 | -470.34906 | -9.98 |
| 423 BANK NO TOE | | | 5790.73952 | -437.98366 | 0.95 |
| 424 TOP OF WATER | | | 5947.00359 | -510.13055 | 0.02 |
| 425 TOP OF WATER | | | 3607.05433 | 11356.33092 | -0.09 |
| 426 BANK | | | 3808.41491 | 11782.89226 | 0.63 |
| 427 TOE | | | 3810.10819 | 11781.55114 | -0.24 |
| 428 CL | | | 3815.34604 | 11778.23320 | -1.97 |
| 429 TOE | | | 3822.68199 | 11776.74611 | -0.49 |
| 430 BANK | | | 3823.41171 | 11776.61195 | 1.34 |
| 500 TOP BANK | | | 3701.27576 | -112.51400 | 0.62 |
| 501 TOE | | | 3699.29444 | -111.86874 | -0.14 |
| 502 TOP BANK | | | 3718.32609 | 685.13401 | 0.80 |
| 503 TOE | | | 3718.66183 | 682.13251 | 0.04 |
| 504 DISK @ WHITE HERON | | | 9934.71288 | 9859.66647 | 2.72 |
| 505 EDGE BULKHEAD | | | 5820.82639 | -563.47904 | 3.80 |
| 506 PI BULKHEAD | | | 5855.86053 | -558.73208 | 3.96 |
| 507 PI BULKHEAD | | | 5865.47581 | -558.20664 | 4.03 |
| 508 PI BULKHEAD | | | 5875.42846 | -556.23375 | 4.03 |
| 509 PI BULKHEAD | | | 5882.27049 | -545.56049 | 5.51 |
| 510 PI BULKHEAD | | | 5880.24510 | -532.36605 | 5.60 |
| 511 PI BULKHEAD | | | 5862.30675 | -524.82786 | 3.86 |
| 512 PI BULKHEAD | | | 5822.94776 | -527.95182 | 4.10 |
| 513 END BULKHEAD | | | 5818.53907 | -531.58693 | 4.07 |
| 514 PI BULKHEAD | | | 5966.15359 | -534.73682 | 5.82 |
| 515 PI BULKHEAD | | | 5943.03947 | -540.73603 | 5.93 |
| 516 PI BULKHEAD | | | 5940.87852 | -537.34555 | 5.55 |
| 517 PI BULKHEAD | | | 5939.51789 | -524.16468 | 5.64 |

MC000979

| Point | Bearing | Distance | Northing | Easting | Elevation |
|---|---|---|---|---|---|
| 518 PI BULKHEAD | | | 5944.26818 | -512.59755 | 4.38 |
| 519 END BULKHEAD | | | 5948.63106 | -511.01023 | 4.18 |
| 520 PI BRIDGE | | | 5939.23222 | -525.20828 | 5.47 |
| 521 PI BRIDGE | | | 5940.28637 | -536.99479 | 5.48 |
| 522 PI BRIDGE | | | 5882.09908 | -544.58740 | 5.50 |
| 523 PI BRIDGE | | | 5880.70637 | -532.80559 | 5.64 |
| 524 BANK | | | 5781.56466 | -461.32170 | 0.68 |
| 525 TOE | | | 5784.71759 | -462.27536 | -0.03 |
| 526 BANK | | | 5790.18979 | -265.84861 | 1.18 |
| 527 TOE | | | 5799.52999 | -258.18623 | -0.33 |
| 528 BANK | | | 5834.17537 | -141.41347 | 1.02 |
| 529 TOE | | | 5837.03382 | -145.14199 | -0.73 |
| 530 BANK | | | 5903.30867 | -34.36711 | 0.95 |
| 531 TOE | | | 5908.42412 | -40.63282 | -0.49 |
| 532 BANK | | | 5950.38705 | 59.26855 | 0.83 |
| 533 TOE | | | 5955.91269 | 63.24701 | -0.90 |
| 534 BANK | | | 5932.79843 | 67.24842 | 1.42 |
| 535 TOE | | | 5931.79715 | 72.27680 | -1.40 |
| 536 BANK | | | 5736.47111 | 38.49779 | 0.90 |
| 537 TOE | | | 5734.06936 | 42.17848 | -0.93 |
| 538 BANK | | | 5600.04876 | 57.31941 | 1.19 |
| 539 TOE | | | 5602.46785 | 65.80036 | -1.64 |
| 540 BANK | | | 5526.28976 | 135.78251 | 1.38 |
| 541 TOE | | | 5528.98213 | 136.71228 | -0.10 |
| 542 BANK | | | 5497.21426 | 215.48576 | 1.13 |
| 543 TOE | | | 5495.00431 | 218.35326 | -1.95 |
| 544 BANK | | | 5382.14271 | 200.69058 | 0.74 |
| 545 TOE | | | 5382.71716 | 203.05075 | 0.05 |
| 546 BANK | | | 5294.35231 | 303.89751 | 1.58 |
| 547 TOE | | | 5296.58304 | 303.77683 | 0.26 |
| 548 BANK | | | 5291.43898 | 432.66782 | 1.10 |
| 549 TOE | | | 5289.06446 | 435.61955 | -0.92 |
| 550 BANK | | | 5154.66485 | 257.05431 | 0.77 |
| 551 TOE | | | 5153.96031 | 258.87379 | 0.04 |
| 552 BANK | | | 5039.75250 | 197.82349 | 0.77 |
| 553 NW CRN | | | 3650.63690 | -2190.68095 | 4.68 |
| 554 NW CRN | | | 3715.51055 | 638.66606 | 0.00 |
| 555 TOE | | | 5036.64562 | 204.62106 | -0.42 |
| 556 BANK | | | 4918.96039 | 223.97420 | 1.43 |
| 557 TOE | | | 4919.88999 | 225.61835 | 0.19 |
| 558 BANK | | | 4834.61142 | 273.71375 | 0.03 |
| 559 TOE | | | 4836.65986 | 280.96941 | -1.42 |
| 560 BANK | | | 4666.53230 | 298.01488 | 1.06 |
| 561 TOE | | | 4663.07005 | 297.37073 | 0.03 |
| 562 BANK | | | 4715.55559 | 262.93277 | 0.95 |
| 563 TOE | | | 4710.87381 | 252.66409 | -0.53 |

MC000980

| Point | Bearing | Distance | Northing | Easting | Elevation |
|-------|---------|----------|----------|---------|-----------|
| 564 BANK | | | 4875.55467 | 216.29608 | 1.05 |
| 565 TOE | | | 4863.86071 | 210.06690 | -0.34 |
| 566 BANK | | | 4924.23082 | 135.18717 | 0.90 |
| 567 TOE | | | 4913.58727 | 135.79377 | -0.32 |
| 568 BANK | | | 4913.39164 | 48.11114 | 1.04 |
| 569 TOE | | | 4904.74429 | 47.00472 | -0.31 |
| 570 BANK | | | 4951.74830 | -61.95122 | 0.89 |
| 571 TOE | | | 4944.08398 | -59.05832 | -0.51 |
| 572 BANK | | | 4894.37330 | -274.81392 | 0.71 |
| 573 TOE | | | 4890.38628 | -269.58269 | -0.33 |
| 574 BANK | | | 4801.75324 | -258.75906 | 0.88 |
| 575 TOE | | | 4798.10032 | -254.09298 | -0.68 |
| 576 BANK | | | 4718.26338 | -374.33185 | 0.99 |
| 577 TOE | | | 4715.77074 | -372.32925 | -0.24 |
| 578 BANK | | | 4576.76265 | -465.48418 | 0.78 |
| 579 TOE | | | 4575.99612 | -460.27921 | -0.14 |
| 580 BANK | | | 4250.14477 | -511.09408 | 0.95 |
| 581 TOE | | | 4254.05985 | -503.94360 | -0.56 |
| 582 BANK | | | 4142.71905 | -476.86232 | 0.97 |
| 583 TOE | | | 4146.63185 | -472.49241 | -0.32 |
| 584 BANK | | | 3948.15008 | -219.52735 | 0.77 |
| 585 TOE | | | 3950.98073 | -214.39932 | -0.25 |
| 586 BANK | | | 3825.79695 | -173.38123 | 0.78 |
| 587 TOE | | | 3828.10665 | -171.71540 | -0.31 |
| 588 BANK | | | 3721.62537 | -88.83330 | 1.03 |
| 589 TOE | | | 3718.90573 | -83.75306 | 0.00 |
| 590 BANK | | | 3646.80567 | -188.73023 | 1.18 |
| 591 TOE | | | 3643.04858 | -184.49087 | -0.31 |
| 592 BANK | | | 3556.32874 | -123.18139 | 1.11 |
| 593 TOE | | | 3557.59469 | -123.75161 | 0.03 |
| 594 BANK | | | 3585.48743 | -50.17415 | 0.81 |
| 595 TOE | | | 3592.89949 | -48.72488 | -0.68 |
| 596 BANK | | | 3545.50214 | -21.20836 | 0.88 |
| 597 TOE | | | 3543.81847 | -12.77066 | -0.45 |
| 598 BANK | | | 3479.94493 | -84.60582 | 0.79 |
| 599 TOE | | | 3476.46798 | -77.71098 | -1.13 |
| 600 BANK | | | 3447.04764 | -3.26185 | 0.80 |
| 601 TOE | | | 3454.07734 | -6.01866 | -1.11 |
| 602 BANK | | | 3464.29674 | 67.80992 | 0.87 |
| 603 TOE | | | 3469.07049 | 69.19466 | -0.57 |
| 604 BANK | | | 3363.26093 | 137.88195 | 0.78 |
| 605 TOE | | | 3366.40095 | 137.79065 | -0.77 |
| 606 BANK | | | 3537.05310 | 387.40212 | 0.49 |
| 607 TOE | | | 3542.55131 | 384.50026 | -0.41 |
| 608 BANK | | | 3523.29055 | 498.30586 | 0.83 |
| 609 TOE | | | 3529.75164 | 497.89584 | -0.11 |

MC000981

| Point | Bearing | Distance | Northing | Easting | Elevation |
|-------|---------|----------|----------|---------|-----------|
| 610 BANK | | | 3645.76160 | 663.11177 | 0.90 |
| 611 TOE | | | 3645.57226 | 660.27040 | 0.47 |
| 612 BANK | | | 3703.85657 | 679.83996 | 1.19 |
| 613 TOE | | | 3704.88998 | 678.02046 | 0.15 |
| 614 BANK | | | 3770.39922 | 722.40583 | 1.12 |
| 615 TOE | | | 3771.13681 | 719.94205 | 0.24 |
| 616 BANK | | | 3814.39831 | 713.77882 | 1.13 |
| 617 TOE | | | 3814.54803 | 711.96390 | 0.09 |
| 618 BANK | | | 3917.69981 | 737.43042 | 1.22 |
| 619 TOE | | | 3915.32679 | 734.90268 | -0.06 |
| 620 BANK | | | 4052.63977 | 664.93186 | 0.70 |
| 621 TOE | | | 4051.41655 | 663.46377 | -0.24 |
| 622 BANK | | | 4151.70963 | 663.10512 | 0.71 |
| 623 TOE | | | 4151.18004 | 657.97786 | -0.27 |
| 624 BANK | | | 4275.61190 | 572.31413 | 0.75 |
| 625 TOE | | | 4272.55068 | 570.91622 | -0.24 |
| 626 BANK | | | 4424.61441 | 440.47995 | 0.86 |
| 627 TOE | | | 4424.08132 | 437.49915 | 0.37 |
| 628 BANK | | | 4530.22623 | 479.83378 | 0.95 |
| 629 TOE | | | 4529.93142 | 476.74807 | 0.22 |
| 630 BANK | | | 4624.54724 | 467.44871 | 2.99 |
| 631 TOE | | | 4623.86426 | 465.95594 | 0.30 |
| 632 BANK | | | 4784.11989 | 384.27770 | 0.80 |
| 633 TOE | | | 4783.39608 | 381.93068 | -0.26 |
| 634 BANK | | | 4983.75892 | 326.29194 | 0.82 |
| 635 TOE | | | 4981.97239 | 323.60052 | -0.09 |
| 636 BANK | | | 5043.60569 | 303.02340 | 1.07 |
| 637 TOE | | | 5044.00644 | 301.75224 | -0.28 |
| 638 BANK | | | 5220.56614 | 547.29259 | 1.21 |
| 639 TOE | | | 5221.59549 | 545.94004 | -0.38 |
| 640 BANK | | | 5282.39402 | 587.58466 | 0.98 |
| 641 TOE | | | 5282.68471 | 584.71922 | -0.78 |
| 642 BANK | | | 5338.48377 | 590.74654 | 0.95 |
| 643 TOE | | | 5336.42361 | 586.92918 | -1.73 |
| 644 BANK | | | 5406.64078 | 525.25954 | 1.06 |
| 645 TOE | | | 5400.45818 | 524.78150 | -2.28 |
| 646 BANK | | | 5429.29436 | 448.66735 | 0.99 |
| 647 TOE | | | 5426.24714 | 448.69626 | -0.68 |
| 648 BANK | | | 5431.14101 | 383.86452 | 0.93 |
| 649 TOE | | | 5427.82627 | 385.00187 | -0.54 |
| 650 BANK | | | 5422.33369 | 338.91676 | 1.48 |
| 651 TOE | | | 5421.22156 | 336.66970 | -0.22 |
| 652 BANK | | | 5491.68198 | 361.34560 | 1.59 |
| 653 TOE | | | 5491.24379 | 358.83597 | 0.19 |
| 654 BANK | | | 5626.23419 | 235.98308 | 0.96 |
| 655 TOE | | | 5623.66149 | 235.70676 | -0.37 |

MC000982

| Point | Bearing | Distance | Northing | Easting | Elevation |
|---|---|---|---|---|---|
| 656 BANK | | | 5654.64443 | 164.54332 | 1.10 |
| 657 TOE | | | 5654.18523 | 162.96564 | -0.72 |
| 658 BANK | | | 5823.06225 | 185.80816 | 1.05 |
| 659 TOE | | | 5823.46516 | 183.75306 | -0.54 |
| 660 BANK | | | 5918.73258 | 188.19878 | 0.85 |
| 661 TOE | | | 5916.84540 | 185.54011 | -0.38 |
| 662 BANK | | | 6014.14480 | 155.30469 | 0.64 |
| 663 TOE | | | 6011.89997 | 154.60315 | -0.82 |
| 664 BANK | | | 6055.54315 | 82.85620 | 0.95 |
| 665 TOE | | | 6052.83697 | 82.73256 | -0.29 |
| 666 BANK | | | 6058.99746 | 15.85373 | 1.07 |
| 667 TOE | | | 6057.34591 | 14.93688 | -0.46 |
| 668 BANK | | | 6043.63135 | -43.03834 | 0.95 |
| 669 TOE | | | 6042.81214 | -41.66642 | 0.21 |
| 670 BANK | | | 5937.98753 | -170.95521 | 0.62 |
| 671 TOE | | | 5936.37772 | -169.60399 | -0.26 |
| 672 BANK | | | 5901.16847 | -240.87676 | 0.93 |
| 673 TOE | | | 5898.22853 | -240.14817 | -0.35 |
| 674 BANK | | | 5876.98226 | -308.84004 | 0.58 |
| 675 TOE | | | 5875.03365 | -308.36786 | -0.36 |
| 676 BANK | | | 5914.00432 | -423.00262 | 0.69 |
| 677 TOE | | | 5911.62708 | -424.32045 | -0.38 |
| 678 BANK | | | 5948.34715 | -467.58436 | 1.17 |
| 679 TOE | | | 5946.43762 | -467.98966 | 0.15 |
| 680 BANK | | | 5957.87080 | -501.89130 | 1.95 |
| 681 TOE | | | 5954.48426 | -501.66461 | 0.67 |
| 682 BOTTOM | | | 3708.17096 | 265.82064 | -1.31 |
| 683 BOTTOM | | | 4164.52122 | 9.10864 | -1.84 |
| 684 BOTTOM | | | 4432.58953 | -188.84751 | -2.03 |
| 685 BOTTOM | | | 4635.36348 | -145.33156 | -1.83 |
| 686 BOTTOM | | | 4307.92018 | 82.18125 | -1.96 |
| 687 BOTTOM | | | 4123.75276 | 382.62633 | -1.39 |
| 688 BOTTOM | | | 3695.34526 | 42.33172 | -1.39 |
| 689 POST | | | 3071.37921 | 491.04495 | 3.85 |
| 690 POST | | | 3072.47448 | 488.22831 | 3.84 |
| 691 POST | | | 3028.89190 | 476.55065 | 3.68 |
| 692 POST | | | 3028.45047 | 479.53039 | 3.52 |
| 693 POL POST/BANK | | | 2968.19198 | 460.50836 | 0.86 |
| 700 PI BULKHEAD @ BRIDGE | | | 5939.55511 | -524.13890 | 5.63 |
| 701 PI BULKHEAD | | | 5944.25363 | -512.67281 | 4.34 |
| 702 END BULKHEAD/BANK | | | 5949.87038 | -510.73615 | 4.29 |
| 703 BANK | | | 5957.60189 | -490.12058 | 1.26 |
| 704 BANK | | | 5938.48285 | -449.08131 | 1.09 |
| 705 POL STH BANK 60FT OS | | | 5793.25407 | -535.29431 | 2.31 |
| 706 END BULKHEAD/BANK | | | 5818.68681 | -531.66035 | 4.02 |

MC000983

| Point | Bearing | Distance | Northing | Easting | Elevation |
|---|---|---|---|---|---|
| 707 PI BULKHEAD | | | 5822.90322 | -528.11049 | 4.07 |
| 708 PI BULKHEAD | | | 5862.32834 | -525.04085 | 3.96 |
| 709 PI BULKHEAD @ BRIDGE | | | 5880.26147 | -532.69974 | 5.68 |
| 1349 ELEV FOR 349 | | | 3057.56806 | 720.70521 | 1.04 |

MC000984

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 102794522
Filing Code Description: Proposed Order
Filing Description: Proposed Final Judgment
Status as of 7/7/2025 10:44 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Deborah Trejo | | deborah.trejo@kempsmith.com | 7/7/2025 9:13:55 AM | SENT |
| E RNorwood | | enorwood@ednorwoodlaw.com | 7/7/2025 9:13:55 AM | SENT |
| Greta Duran | | greta.duran@kempsmith.com | 7/7/2025 9:13:55 AM | SENT |
| Ken Slavin | | Ken.Slavin@kempsmith.com | 7/7/2025 9:13:55 AM | SENT |
| Vanessa Lusby | | AU.Secretary@kempsmith.com | 7/7/2025 9:13:55 AM | SENT |
| Valerie R.Auger | | Valerie.Auger@kempsmith.com | 7/7/2025 9:13:55 AM | SENT |
| Sharnezia Mitchell | | sharnezia.mitchell@kempsmith.com | 7/7/2025 9:13:55 AM | SENT |

| | | |
|---|---|---|
| LONE OAK CLUB, LLC, | § | IN THE DISTRICT COURT OF |
| Plaintiff | § | |
| | § | |
| VS. | § | CHAMBERS COUNTY, TEXAS |
| | § | |
| DAWN BUCKINGHAM, M.D. | § | |
| AS COMMISSIONER OF THE TEXAS | § | |
| GENERAL LAND OFFICE | § | |
| Defendant | § | 253RD JUDICIAL DISTRICT |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above-captioned cause came on for trial before the Court without a jury on May 28, 2025. Plaintiff, Lone Oak Club, LLC ("LOC"), and Defendant, Dawn Buckingham, M.D., as Commissioner of the Texas General Land Office, and their respective attorneys were present and announced ready for trial. After considering the pleadings, the evidence, and the arguments of counsel, the Court – in response to a request from Defendant, Dawn Buckingham, M.D., as Commissioner of the Texas General Land Office – makes its findings of fact and conclusions of law as follows:

## FINDINGS OF FACT

1.     The Sophronia Barrow Survey, Abstract 46, Chambers County, Texas ("Barrow Survey"), was granted to Sophronia Barrow in a Patent from Edmund J. Davis, Governor of the State of Texas, dated January 9, 1872, recorded at Book L, Page 299 in the Official Public Records of Chambers County, Texas ("Patent"); the land conveyed by that patent is more particularly described as follows

> One hundred and sixty (160) acres of land situated on the East side of Galveston Bay about 15 miles South 8° East from the town of Wallisville by virtue of her affidavit before the District Clerk in and for said County dated Dec. 20, 1871 in accordance with the provisions of an Act affirmed March 24, 1871. Beginning on the South boundary line of J. S. Roberts League, surveyed 1330 varas East of his Southwest corner. Thence South at 455 varas edge of marsh 950 varas corner in

said marsh. Thence West 950 varas corner a post. Thence North 950 varas corner stake on the North side of said Bayou. Thence East with said Roberts line at 95 varas Orr's Bayou 12 varas wide runs Southwest 230 varas same Bayou runs Northwest 950 varas to the Beginning.

2.      Lone Oak Bayou is a body of water located in Chambers County commonly known as Lone Oak Bayou, being the same bayou referred to in the original Patent for the Barrow Survey as "Orr's Bayou", identified as "Lone Oak Bayou", and includes the wide portions of the bayou sometimes referred to as lakes, which bayou and lakes are shown on Plaintiff's Ex. 3 ("Bayou").

3.      The Bayou has defined banks along its course through the Barrow Survey, and those banks are evident and can be located and measured by commonly accepted land surveying methods.

4.      The Bayou has a defined bed along its course through the Barrow Survey, which bed is the area located between the evident banks of that bayou through the Barrow Survey, which bed can be located and measured by commonly accepted land surveying methods.

5.      The bed of the Bayou, located in the Barrow Survey is the area between the evident banks of the Bayou as it traverses the Barrow Survey, which includes the wide portion of the Bayou sometimes referred to as Lone Oak Lake. Those evident banks are natural monuments of the location of the Bayou and its bed within the Barrow Survey, which evident banks are shown on Plaintiff's Ex. 13, which is a map of a survey conducted on the ground that identifies the evident banks of the Bayou overlaid on an aerial image of the Barrow Survey and surrounding surveys. The coordinates showing the location of the evident banks of the Bayou within the Barrow Survey are listed within point numbers 524 through 688 of the Bayou, which points were established by an actual survey of the Bayou within the Barrow Survey and a portion of the evident banks of the Bayou immediately south of the Barrow Survey ("Bed of the Bayou").

2

6.     The Bayou has a current of water along its course through the Barrow Survey, and it has a permanent source of water supply.

7.     The average width between the evident banks of the Bayou along its course through the Barrow Survey is 30 feet or more.

8.     Along a portion of its course through the Barrow Survey, the Bayou widens out forming what is known as Lone Oak Lake. That lake has banks that are evident and that can be located and measured by commonly accepted land surveying methods, and the average width between those evident banks is 30 feet or more. That lake has a bed that can be located and measured by commonly accepted land surveying methods; it has a current of water and has a permanent source of water supply.

9.     The Bayou is tidally influenced.

10.     In Chambers County, as a result of its very flat topography and the ebb and flow of the tides, it is physically impossible to perform a gradient boundary survey of the banks of the rivers, bayous, and streams, including the Trinity River, on a significant portion of their final course into Trinity Bay, including the course of the Bayou through the Barrow Survey. Namely, the flow of those rivers, bayous and streams is of such a nature that it does not create the type banks, known as qualifying banks, necessary to survey those banks by the gradient boundary method.

11.     Even though the banks of the Trinty River, the Bayou, and the other rivers, bayous, and streams – on their course through Chambers County – cannot be located and measured by the gradient boundary surveying method, they do not cease to be natural streams, and if they are wider than 30 feet, they do not cease to be statutory navigable streams – just because their banks cannot be located and measured by the gradient boundary surveying method.

3

12. In the summary judgment record upon which the trial court granted summary judgment that the Bayou was a navigable stream, there was (a) no evidence that it was physically impossible to locate and measure the banks of the Bayou by the gradient boundary surveying method, or (b) that the gradient boundary surveying method is not the proper method to locate and measure the banks of the Bayou.

13. To the extent that the Supreme Court's Opinion in *Bush v. Lone Oak Club*, 601 S.W.3d 639 (Tex. 2020) mandates that the only method by which the banks of the Bayou can be located and measured, that mandate is clearly erroneous. Under that mandate, even the Trinity River would not be a statutory navigable stream on its final course through Chambers County, because its banks cannot be located and measured using the gradient boundary surveying method. It is physically impossible to perform a gradient boundary survey on those portions of the Bayou and the Trinity River because, by the nature of their flow, they do not create the type banks, known as qualifying banks, that are necessary to perform a gradient boundary survey of those banks.

14. Plaintiff, Lone Oak Club, LLC ("LOC"), proved, by a preponderance of the evidence, a regular chain of conveyances emanating from the sovereign, the State of Texas, into LOC for the surface estate of the Barrow Survey. (Plaintiff's Exs. 39-104).

15. The Defendant did not prove, by a preponderance of the evidence, that EAI's *ultra vires* trespass to try title action is barred by any statute of limitation.

### CONCLUSIONS OF LAW

1. This is an *ultra vires* trespass to try title action by LOC against Defendant, in her capacity as the Commissioner of the Texas General Land Office ("GLO"), involving rival claims between the Defendant and LOC as to the ownership of the surface estate of the Bed of the Bayou located in the Barrow Survey. The State is not a party to this action. Defendant, in her capacity

4

as a government official, by and through employees of the GLO, claims that the State owns the Bed of the Bayou located in the Barrow Survey.

2. Pursuant to *State v. Lain*, 349 S.W.2d 579 (Tex. 1961), the Defendant does not have sovereign immunity from LOC's claims in this action.

3. Due to the parties' conflicting claims of title, this controversy is ripe.

4. This Court has subject matter jurisdiction over this action.

5. The Bayou – including the portion of the Bayou that broadens out into what is known as Lone Oak Lake – located within the Barrow Survey is a statutory navigable stream and its conveyance *via* the Patent was validated by the Small Bill, TEX. REV. CIV. STAT. art. 5414a.

6. LOC's *ultra vires* trespass to try title action was not barred, in whole or part, by any statute of limitation.

7. LOC has superior title to the Defendant in the surface estate only of the Bed of the Bayou.

8. LOC is entitled to recover from Defendant title to, and possession of, the Bed of the Bayou which is located in the Barrow Survey – save and except the following:

   a. The State's title, right, or interest, in and to the sand and gravel lying within the Bed of the Bayou;

   b. The mineral estate underlying the Bed of the Bayou; and

   c. The right of the public to navigate and to use the waters of the Bayou.

9. LOC is entitled to its writ of possession to the Bed of Bayou which is located in the Barrow Survey – save and except the following:

   a. The State's title, right, or interest, in and to the sand and gravel lying within the Bed of the Bayou;

5

b.  The mineral estate underlying the Bed of the Bayou; and

c.  The right of the public to navigate and to use the waters of the Bayou.

SIGNED this 22 day of August, 2025

Honorable Chap B. Cain III
Judge of the 253rd District Court,
Chambers County, Texas

FILED
THIS THE 22 DAY OF August
A.D. 2025 AT 1256 O'CLOCK P M
PATTI L. HENRY
DISTRICT CLERK, CHAMBERS COUNTY, TEXAS
BY _____ DEPUTY

6

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Greta Duran on behalf of Ken Slavin
Bar No. 18496100
gduran@kempsmith.com
Envelope ID: 109363837
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellant
Status as of 12/22/2025 12:21 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Deborah Trejo | | deborah.trejo@kempsmith.com | 12/22/2025 12:10:50 PM | SENT |
| Rachel Moreno | | rachel.moreno@kempsmith.com | 12/22/2025 12:10:50 PM | SENT |
| Greta Duran | | greta.duran@kempsmith.com | 12/22/2025 12:10:50 PM | SENT |
| Sharnezia Mitchell | | sharnezia.mitchell@kempsmith.com | 12/22/2025 12:10:50 PM | SENT |
| Terry Castillo | | terry.castillo@kempsmith.com | 12/22/2025 12:10:50 PM | SENT |
| Ken Slavin | | ken.slavin@kempsmith.com | 12/22/2025 12:10:50 PM | SENT |
| Ed Norwood | | enorwood@ednorwoodlaw.com | 12/22/2025 12:10:50 PM | SENT |
| Michael Sanders | | mcs@sandersfirm.law | 12/22/2025 12:10:50 PM | SENT |